## BALL & SOCKET FASTENER CO. v. BALL GLOVE FASTENING CO.[1]

(Circuit Court of Appeals, First Circuit. October 27, 1893.)

### No. 57.

1. SPECIFIC PERFORMANCE—NATURE OF CONTRACT — PATENTS FOR INVENTIONS.
   Where the parties to litigation respecting rival patents make a compromise contract, whereby one withdraws from the business, turns over to the other all his tools, and grants him an exclusive license, the latter to issue to the trade samples of the goods, and offer them to the public in the same manner as other goods of its own manufacture, and carry on the business for the common interest, this creates an agency and fiduciary relations, and a bill for specific performance will lie to enforce it.

2. SAME—CONSTRUCTION OF CONTRACT.
   Such a contract assumes that the patents referred to in it are valid, according to the true construction of their claims; and plaintiff's patents cannot, for the purposes of the contract, be limited or affected by the issuance of a patent to defendant on a prior application pending at the time of the contract.

3. SAME—LIMITATION OF CLAIMS—REJECTION AND AMENDMENT.
   Application of the rule that the amendment of a rejected broad claim by the insertion of specific details restricts the claim, at least with reference to the particulars named, to the precise details in the precise forms described, although a different form might be a mere mechanical equivalent.

4. SAME—INFRINGEMENT—EQUIVALENTS.
   Where the essence of a patent is the mere fashion of detailed construction in glove fasteners, a socket with yielding sides to receive a ball cannot be the equivalent of an eyelet, through which the ball or button penetrates, and protrudes on the further side.

5. SAME—GLOVE FASTENERS.
   The second claim of patent No. 290,067, and the fourth claim of No. 306,021, issued to Edwin J. Kraetzer, December 11, 1883, and September 30, 1884, respectively, for improvements in glove fasteners, are restricted by the proceedings in the patent office to the precise details described. 36 Fed. Rep. 309, 39 Fed. Rep. 790, and 53 Fed. Rep. 245, reversed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

In Equity. Bill for relief in respect to a contract relating to certain patents for improvements in glove fasteners. There was a

[1] Rehearing granted.

decree for complainant in the court below. See 36 Fed. Rep. 309, 39 Fed. Rep. 790, and 53 Fed. Rep. 245. Respondent appeals. Reversed.

The contract in question was as follows:

This agreement, made this twenty-first day of March, A. D. 1885, by and between the Ball and Socket Fastener Company of Nashua, N. H., a corporation duly organized under the laws of the state of New Hampshire, party of the first part, the Ball Glove Fastening Company, of Boston, Mass., a corporation duly organized under the laws of the state of Massachusetts, party of the second part, and Henry M. Rowe, of Winthrop, William F. Griffin, of Boston, Edwin J. Kraetzer, of Cambridge, George R. Gay, of Cambridge, Sylvester S. Crosby, of Cambridge, and Alfred T. Turner, of Cambridge, all in the state of Massachusetts, party of the third part, witnesseth: That whereas, the party of the first part owns and controls certain letters patent granted to William S. Richardson, and is engaged in the business of making what are known as "ball and socket fasteners;" and whereas, the said party of the second part is proprietor of certain letters patent dated September 30, 1884, numbered 306,021, and other letters patent dated July 17, 1883, numbered 281,376, and other letters patent dated December 11, 1883, numbered 290,067, all granted to Edwin J. Kraetzer for improvement in glove fastener, and also owns and controls two English patents, one dated January 22, 1884, No. 1,861, and the other dated August 15, 1884, No. 11,319, or however otherwise the two English patents may be numbered, the same being taken as a communication, and for said invention of said Kraetzer, as patented in the United States; and whereas, the party of the second part began the manufacture of glove fasteners under said Kraetzer patent, and the party of the first part brought suit in the circuit court of the United States for the first circuit and district of Massachusetts against the parties herein named as parties of the third part, being stockholders of the said Ball Glove Fastening Company, which suit is still pending and undetermined; and whereas, the parties hereto are desirous of adjusting their controversies, and of making a business arrangement for the manufacture of said Kraetzer fastenings for common advantage: It is hereby understood and agreed by and between the parties of the first and second parts that the party of the first part is hereby made the exclusive licensee, under the said Kraetzer patent for the United States, and under the said English letters patent, to manufacture and sell glove fastenings, or other fastenings embodying the contrivances and improvements shown in the said Kraetzer letters patent, and to that end agree to transfer to the said party of the first part the dies and tools already made for the manufacture of said articles. And the party of the first part hereby agrees to issue to trade samples of the said goods, and offer the same in the same manner that it now issues or offers, or shall hereafter issue or offer, other goods of its own manufacture. It being understood that the present method of exhibiting ball and socket fasteners to the trade is to put samples of the several sorts upon cards for the selection of customers, each sort of fastening having a particular number. The price to be put upon said Kraetzer fasteners by the party of the first part shall not exceed the prices put upon the ball and socket fastenings as now known, and shall not exceed similar goods for similar uses made by the Ball and Socket Fastener Company. The object of this article being that the Kraetzer and Richardson fasteners shall be offered by the Ball and Socket Fastener Company to the trade on equal footing and terms, and that the public may select between them on their merits. And similar rates of discount for similar quantities shall be allowed on said Kraetzer fastenings as on the Richardson. And for each and every gross of the Kraetzer fastenings sold by said Ball and Socket Fastener Company the party of the first part shall account for Kraetzer fasteners to the party of the second part once in six months, to include the last days of June and December, for all sales made in the preceding six months, rendering the account within the first fifteen days of July and January, respectively, and will pay for each and every gross sold within the period of the account at the rate of twenty cents a gross as royalty on said Kraetzer

fastenings. This agreement or license is to continue during the life of the said patents, both in the United States and in England. The party of the second part is to pay the English patents fees as they accrue from time to time. The party of the first part is to prosecute infringements of their patents at their discretion, and the party of the second part is to prosecute infringements of its patents at its discretion: provided, however, that if the party of the first part thinks it of paramount importance that an infringement should be prosecuted, which the party of the second part does not consider should be, the party of the first part may prosecute infringements of the Kraetzer patents in the name of, and for the advantage of, the party of the second part, on assuming the cost of prosecution, and indemnifying the party of the second part against loss for damage therefor. And it is further understood and agreed by and between the parties of the first and third parts that a stipulation shall be made for the discontinuance of the suit now pending, without costs or prejudice, and that the reason shall be stated in said stipulation that the complainants have compromised the contention, and undertaken the manufacture of the goods alleged to be infringed for mutual benefit of the parties interested. Executed and delivered by the treasurers of the respective corporations on the day and year first above written.

The Ball & Socket Fastener Co.
By Wm. S. Richardson, Treas.
Ball Glove Fastening Co.
[Seal.]    By W. F. Griffin, Treas.
Henry M. Rowe.
William F. Griffin.
George R. Gay.

In presence of (corrections being first made as noted by my initials in the margin) Thomas Wm. Clarke.

Whereas, since the following agreement of March 21, 1885, was signed, an interference has been declared between the said Kraetzer patent, No. 290,067, and an application of W. S. Richardson, of which the Ball and Socket Fastener Company is or will be the assignee, it is hereby understood and agreed by the said Richardson and by the Ball and Socket Fastener Company that, in case the said interference is decided in favor of said Richardson, such decision shall in no way prevent the carrying out in good faith of the aforesaid agreement of March 21, 1885. Executed and delivered this eighth day of April, 1885.    Wm. S. Richardson,
The Ball and Socket Fastener Co.
By W. S. Richardson, Treasurer.

In presence of W. F. Griffin.

Cousten Browne and Thomas W. Clarke, for appellant.
John R. Bennett and William B. H. Dowse, for appellee.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. The appellant (respondent below) contends that there is no jurisdiction in equity over the subject-matter of this bill. If it is a bill for infringement, as the complainant below seems to regard it, the parties are properly made, and the jurisdiction is, of course, not to be questioned. If it is to be taken as a bill for a specific enforcement of rights under the contract set up in it, the court is yet of the clear opinion that for that purpose we have here the proper parties, and full jurisdiction in equity over the merits of the controversy.

The prayers of the bill are sufficient in either aspect, as they include discovery and an account, a decree for payment, injunctions

to prevent the violation of the provisions of the agreement, and "such other relief as the equity of the case may require." So far as the relief desired is a mere account of stipulated royalties, counsel are not able to point out any decision of the supreme court clearly sustaining the bill. On the other hand, it is claimed that Root v. Railway Co., 105 U. S. 189, defeats jurisdiction in the case at bar. But that was a case of a mere tortious infringement of a patent expired before the bill was brought, while this suit, in one view, relates to patents still in life, and, in another, to agreed royalties.

The contract stipulated that the respondent below should render semiannual accounts; and as it was exclusively to conduct the manufacture and sale of the goods in question, and as the knowledge of the facts necessary to make an account was therefore peculiarly, and, indeed, wholly, its own, there is a strong equity in favor of enforcing specifically this portion of the agreement. But the matter before the court is one especially the subject of equity jurisdiction and relief. This will appear from an examination of the terms of the contract between the parties. This stated that they were desirous of making a business arrangement for the manufacture of the Kraetzer fasteners for common advantage. It made the respondent below the exclusive licensee under the Kraetzer patents, so that the complainant below withdrew from all active part whatsoever. It provided that the complainant should transfer to the respondent the dies and tools, and that the latter should issue to the trade samples of the goods, and offer the same in the same manner as other goods of its own manufacture. It stated that its object was that the Kraetzer and Richardson fasteners should be offered by the respondent to the trade on equal footing and terms, so that the public might select between them on their merits; also, it provided that, in disposing of the litigation then existing, it should be stated that a compromise had been made for the mutual benefit of the parties interested. It was agreed that the contract should continue during the life of the various patents referred to in it.

We find, then, an arrangement by which, for a period of years, the complainant below unreservedly intrusted itself, its interests, and property related to the subject-matter of this suit, to the hands of the respondent below; and the latter undertook to carry on the resultant enterprise for the common interest. Perhaps this did not create a trust, in the technical sense of the word; but it did create a joint interest, an agency, and fiduciary relations, with all the duties resting on the respondent which the word "fiduciary" implies. The adjustment and protection of rights and interests growing out of such joint and fiduciary relations are the peculiar privileges of equity jurisprudence, by the consent of all the authorities.

Having determined that the circuit court had jurisdiction to pass on the merits of the case at bar, it remains to be considered what they are. First of all, it must be admitted that a contract of this character, establishing fiduciary relations, must be liberally con-

strued to maintain its purpose, secure good faith in its execution, and prevent unjust evasions. Nevertheless, if a complainant has mistaken his remedy, or if his bill is not properly framed to meet truly the breach of the agreement, if there is a breach, the court ought not to attempt to make the law elastic, beyond what the law permits, even though the result may temporarily delay justice.

The appellee, while at times insisting that the case presents only, or mainly, questions of infringement, at other times urges upon the court that the specified royalty was to be paid on all fasteners "embodying the contrivances and improvements shown in the said Kraetzer letters patent." What we put in quotation marks is, indeed, an extract from the contract in controversy; but the appellee apparently dwells on the word "shown," as though all contrivances and improvements exhibited by the Kraetzer patents were to be regarded by the court, rather than only those which are technically claimed in them. But the bill was not framed to raise this proposition. While its allegations are limited to the inventions which were patented, and in accordance therewith, the decrees in the circuit court were specifically based upon the second claim of Kraetzer's first patent, and the fourth claim of his second. Therefore, we are to deal, not with what is shown in either the Richardson or Kraetzer patents, in any general sense of the word, but with what was covered by the respective claims thereof, and we are to deal with them on the principles which we will now set out:

The question of the validity of the Kraetzer patents stands, so far as this case is concerned, upon the agreement between the parties, which, for all present purposes, assumes that both the Kraetzer and Richardson patents are valid. We start, therefore, with the proposition that all the patents referred to in the agreement are to be taken to be valid according to their respective claims. We also start with the further proposition that the Kraetzer patents are in no way affected, for the purposes of this cause, by the one issued to Richardson, September 8, 1885, No. 325,699, because that was obtained on his application shown in the indorsement on the contract, and was thereby provided for. The case is to stand as though it had never been applied for or issued, and as though none of its claims had ever been conceived by his brain. Much testimony will be found in the record touching this indorsement; but it is not necessary to dwell on it, as its effect is too clear to be misunderstood. Indeed, independently of it, the result would be the same. To permit any undisclosed improvements controlled by either party to be set up for the purpose of limiting the rights of the other under the contract at bar, and especially for diminishing the apparent extent or validity of its patents, would effect an unjust evasion of the stipulated terms. To sum up: So far as this suit is concerned, the various patents referred to in the agreement are to be held valid, and the claims in each to be fully sustained according to their fair intent, as such claims are usually construed under the rules of the patent laws; and, so far as the validity and extent of the claims are concerned, neither is to be diminished by any prior patents or inventions, known or unknown, disclosed or undisclosed, although

they may come in, to some extent, for the purposes which we will state.

The record contains very much touching the state of the art, and prior patents. From what we have already said, it is plain that they cannot be introduced here for the purpose of invalidating any of the patents covered by the contract, or any portion of any claim of any of such patents. Nevertheless, they, as well as the file wrappers and their contents, are appropriate to be considered for ascertaining the true construction of the various patents involved, and especially for determining whether, according to such construction, the improvements were of a primary or secondary character, and how far the combinations admit of the doctrine of equivalents. On this topic, it is to be borne in mind that, in general, for the purposes of a bill of this character, while the validity of the several claims of the various patents cannot be attacked, their true construction, assuming them to be valid, must be ascertained, as in cases of bills in equity for damages and injunctions against strangers infringing.

Coming, therefore, to the fasteners of the later Kraetzer patent, No. 306,021, which clearly differ, at least in style, from the Richardson fasteners, in that the former present the appearance of a button, the question arises whether the patent is of such a primary character that it is to be construed broadly, or whether it is to be held narrowly, not merely to the combination, but even to the precise form of combination shown in the specification and claims. With reference to this, we examine only claim 4, as that is the only one brought to our attention, or to the attention of the circuit court, and is the one upon which the decree of that court was expressly based. Looking at the general state of the art, this claim is, presumably, not to be construed to cover every fastener having a hood, or the appearance of a button. This is plain from the Mead patent, No. 227,440, issued in 1880, and several other patents contained in the record, and which need not be stated in detail. Nevertheless, notwithstanding this presumption, and for the reasons already stated, if the claim is, in fact, so broad as to cover every fastener with a hood having the appearance of a button, the patent, for the purposes of this case, must be construed accordingly, although its issue was inadvertent, and although, as against strangers infringing, invalid. But, for the purpose of ascertaining its true construction, we turn to the file wrapper and contents. It there appears that the patent, as originally applied for, was rejected on account of the Schloss English patent of 1870, frequently referred to in the record. It was thereupon amended by inserting in the fourth claim the words, "its base ring as described, and," so as to read, "and with a separate hood having two ears extending from its base ring as described, and between said flanges or jaws." The reasons for this amendment need not be stated in detail, but they may be inferred from the addition to the specifications which relates to the Schloss patent. This amendment must be held to be a conclusive admission that claim 4 does

not cover a primary improvement, and must be limited to a combination having ears extending from the base ring precisely as described, although ears extending from another point might be a mechanical equivalent. After this amendment, the application was again rejected, on the ground that it was anticipated by the British patent of 1877, No. 809, issued to Bayer, and also frequently spoken of in the record. In consequence of this, the claim was again amended by inserting the word "entire" before "ring," so as to read, "an entire ring, provided with two elastic flanges or jaws," and the specifications were amended by inserting what now appears touching this Bayer patent.

The rule touching the effect of such amendments has been several times laid down by the supreme court in patent causes, although it is only a peculiar application of the general principles of law relative to the interpretation of instruments. In the case at bar, the amendments relate to the very pith and marrow of the alleged improvement, touch directly the question of novelty, and were understandingly and deliberately assented to; so that the rule of interpretation referred to undoubtedly applies. Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624, 5 Sup. Ct. Rep. 475; Crawford v. Heysinger, 123 U. S. 589, 8 Sup. Ct. Rep. 399; and Watson v. Railway Co., 132 U. S. 161, 165, 10 Sup. Ct. Rep. 45, are striking instances of its application under circumstances closely analogous to those of the case at bar.

It is plain, therefore, that the amendments stated compel such a construction of this claim as, at least with reference to the two particulars in which amended, narrows it down to precise details in the precise forms described. While, with reference to other elements, there may be some room for objections to equivalents, with reference to these two particulars there is, essentially, none. The attention of the learned judge of the circuit court could not have been properly called to the file wrapper and its contents, and to the amendments which we have explained. Kraetzer is estopped from claiming that "ears," or what will answer their purpose, extending from anything except the base of the hood, are the equivalent of his devices. Even if the whole substance of his inventions, in other particulars, was found in the fasteners manufactured by the respondent below, yet the bill could not be sustained, so long as the amendments to claim 4 touching "an entire ring," and the extension of the "two ears from the base ring of the hood," are not covered. In the Kraetzer fasteners, the two ears are upset over the ring located on the inside of the fabric, for the purpose of combining the whole device together, and securing it to the glove. As stated in the claim, these ears extend from the base ring of the hood, and nowhere penetrate any part of it. In the Mead fasteners, of which complaint is made in this suit, the ears which thus bind the different parts to each other penetrate the dome of the hood from without, and are upset within it, before reaching any part of its base. In this particular, the Kraetzer fasteners, as covered by claim 4 of his later pat-

ent,—giving this claim its true construction, in view of the file wrapper and its contents,—are not imitated in the Mead fasteners. As the claim comes down to the merest mechanical details, a change in such details is not a colorable departure, but a substantial one, so far as this patent is concerned. Duff v. Pump Co., 107 U. S. 636, 639, 2 Sup. Ct. Rep. 487.

It is true that the complainant below claims that the very principle of the invention is "the addition of a hood to the eyelet, or fastening device, of the buttonhole member, to give it a button-like appearance." We have seen it is not possible to maintain this proposition, though, if it were, our conclusions would probably be in conformity with the views of the circuit court.

The proposition of the complainant below with reference to the second claim of the earlier Kraetzer patent, which claim is the only other basis of contention brought to the notice of the court, is stated as follows:

"The buttonhole member [meaning the Mead device] is a spring-flanged eyelet formed of two parts,—a ring or base provided with two spring flanges, and an eyelet for securing the spring flanges to the flap of the glove. The spring-flanged eyelet thus formed may very properly be said to be an exact counterpart of the Kraetzer spring-flanged eyelet. It is immaterial how you designate the parts, since the fact remains that the parts are substantially identical."

In view of the complicated history of the second claim of the earlier Kraetzer patent, as shown by the file wrapper and its contents, the court feels sensibly the omission from the application for it of any explanation of the nature of the invention which it covers, especially as there is also a like lack in the proofs. The patent contains nothing touching this particular, except the following:

"It [meaning the invention] consists in a novel construction and arrangement of the parts as hereinafter more fully set forth and claimed, by which a cheaper and more effective device of this character is produced than is now in ordinary use."

It is claimed that no such explanation is needed, because the question of identity, as between the Kraetzer patents and the Mead construction, may be determined by the court upon comparison. But whether or not this is practicable depends on the further question, whether the device is so simple that one not skilled in the art can be assumed to understand it, and probably, in the present case, to understand, also, the somewhat complicated methods of manufacturing the various fasteners presented in this record, with reference to the facility and cheapness of production. It is true that by a practice which seems to have somewhat gained favor in the courts, and which appears to be preferred by some patent solicitors, a description is held sufficient, if from it, aided by the drawings, the model, and the other parts of the application, the invention can be fully ascertained. Rob. Pat. § 489, note 1. In other words, the position seems to be that what can be made certain by any reasonable amount of skill is of itself certain.

While, however, it is not necessary, for the present case, to consider how far a description is sufficient which gives only the de-

tails of the article claimed, without stating the pith of what the novelty consists of, or how far the invention extends, we are compelled to repeat that the absence of this, in the case at bar, alike in the specifications and in the proofs, in connection with the complicated history of this second claim, and the entire lack of explanation of the various steps taken in perfecting it, has added to the difficulty which the court has had in arriving at its conclusions. It appears from the brief of the appellee that there was used by it in the circuit court an affidavit of Mead, apparently somewhat explaining the nature of the various inventions, and which may have materially affected the conclusions of that court; but we do not find this in the proofs submitted to us.

An examination of the record discloses that this second claim is merely for a combination of the narrowest and most precise character. Moreover, while it is true, as said by complainant, that there might be such a device as a proper eyelet with a hood added, and while the later Kraetzer patent comes quite near this, yet, for the purposes of the fasteners in controversy, the socket with yielding sides, which in the Richardson patents antedates Kraetzer, and appears again in the Mead device, cannot be the equivalent of an eyelet,—a thing in such common and universal use,—whether with or without Kraetzer's flanges. To maintain otherwise, where the essence is in the mere fashion of detailed construction, is contrary to the common sense of mankind. The eyelet answers the purpose of a buttonhole, the metallic sides being simply for protection and support,—the ball, button, or whatever it may be, penetrating, and, as expressly stated in Kraetzer's specifications, protruding on the outer side,—while the socket, as used in the devices now before the court, answers throughout as a cap, and as a crude ball and socket joint. Pending the numerous efforts of Kraetzer to obtain this patent, and in referring to the Richardson patents, No. 260,050 and No. 276,714, he said in his letter to the commissioner of patents of October 1, 1883, that they "show no eyelets," yet each of them had the socket with yielding flanges. While, under other circumstances than those at bar, and with reference to other devices than those which we are now considering, an eyelet and a socket may prove to be equivalents, yet, for the present uses, there is an essential distinction between them.

It is not necessary to follow with entire detail the fortunes of Kraetzer's application for this earlier patent. Originally, it contained six claims, one of them, as already stated, being specifically for his alleged eyelet, which was afterwards abandoned. His first application was rejected on the ground that it was anticipated by the Richardson patents No. 260,050 and No. 276,714. His claims were amended, and a patent again refused for apparently the same reason. Finally, what is now the second claim was stated as one for a combination of a ball catch adapted for attachment to a glove, and an eyelet, with certain details, which were described. This was again rejected as anticipated by the Richardson patents, already referred to. It did not describe the particular method of attaching the ball catch, and, being thereafterwards amended so as

to describe this in the precise terms which now appear, it was at last allowed. Thus, on the principle of the cases which we have already cited, Kraetzer's patent came down to minute details of an inner plate, an outer plate, a stud, a shank, and a ball, and an eyelet, without any right to assert originality as to the elements which we have named, or any of them, or even as to the combination of those elements, except with the minute details specified; and no contrivance which uses the socket can be held as infringing his second claim, of which the details of an eyelet are confessed on the patent office records to form a part.

The complainant below urges upon the court that the whole transaction was an intentional fraud on the part of the respondent below, and that developments subsequent to the execution of the contract in question show an entire want of good faith in its negotiation. The bill, however, is not so framed as to call upon the court to investigate propositions of this character. It does not follow that the complainant is without remedy. If the Mead device was more desirable than that of the complainant, it, perhaps, ought to supersede it; but if, on the other hand, the Mead fasteners are not superior, and especially if they are inferior, or have been adopted and pressed upon the market by the respondent solely for the purpose of evading payment of royalties to the complainant, or otherwise under such circumstances as to charge the former with profits on account of the fiduciary relationship already described, it is to be presumed that the latter has ample remedy on the contract at law or in equity. These matters, however, are not now for consideration, as the bill rests entirely on the claim that respondent below has produced the very article covered by Kraetzer's patents, and we suggest them only in order that the parties may see we do not go beyond what the precise issues now before us call for.

Decree of the circuit court reversed; case remanded to that court, with instructions to dismiss the bill, with costs.