RICHARDSON et al. v. AMERICAN PIN CO.

(Circuit Court, D. Connecticut. March 20, 1896.)

No. 804.

1. PATENTS—INTERPRETATION—INFRINGEMENT.
Where the patentee of a hook for garments claimed and illustrated a tongue having its free end forming a loop coincident with the bend of the hook, explaining that what he meant thereby was such a loop as to engage and afford a seat for the eye, and thus afford a triple bend to strengthen the

hook, *held*, that no other construction would infringe, unless it performed some one of these functions in the same way.

2. SAME—ESTOPPEL—STATEMENTS IN FILE WRAPPER AND CONTENTS.

Where the patent is not for a broad invention, but merely for a change of form, statements and admissions contained in the file-wrapper and its contents, in respect to amendments made upon the citation of references involving the issue of novelty, constitute an estoppel against the patentee, in the interpretation of his claims. Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, distinguished.

3. SAME—HOOK FOR GARMENTS.

The De Long patent, No. 411,857, for a hook for garments, construed, limited, and *held* not infringed.

This was a bill in equity by Thomas De Q. Richardson and others against the American Pin Company for alleged infringement of letters patent No. 411,857, issued October 1, 1889, to Frederick E. De Long, for a hook for garments.

Bradbury Bedell, Strawbridge & Taylor, and Frederick P. Fish, for complainants.

George E. Terry, Edmund Wetmore, and Benno Loewy, for defendant.

TOWNSEND, District Judge. When Frederick E. De Long, the patentee herein, filed his original application for a hook for garments, he said:

"The tongue has a loop or looped extension, C, which is coincident with the bend, d, of the hook, so that the eye or loop engages with both extension and bend; said extension increasing the strength of the hook, as is evident."

All of his claims covered a locking tongue or hump in said hook. Upon citation of references, he amended his claim to cover—

"A garment hook having an auxiliary hook at the bend of the hook proper, forming a reinforce for the hook at said bend, substantially as described."

The references being insisted on, his attorney wrote, saying, concerning the Rodgers English Patent, No. 8,068, of 1839:

"But it has no auxiliary hook, serving as a reinforce to the main hook. None of the references * * * have this feature."

Finally, the attorney differentiated his hook from the prior art referred to by the patent office, by the following amendment:

"Continuous of the tongue, B, is a loop or looped extension, C, which is coincident with the bends, d, of the hook; it being noticed that said loop, C, is between the side pieces or portion, a, of the hook, A. The tongue or loop, C, is coincident with the bends, d, of the hook proper; it being noticed that the hook consists of the sides, a, the eyes, b, the front, c, and the bends, d, between said sides and front, so that the eye which is connected with the hook engages with both the looped extension, C, and the bends, d; said extension increasing the strength of the hook, as is evident, and also preventing the eye from slipping behind the tongue."

That such looped extension, forming a reinforced seat for the eye of the hook, originally described and continuously insisted on as the only departure from the prior art, was the essential feature of the construction, which gave it patentable novelty, is manifest from an examination of both applications, the other contents of both file wrappers, and the patent as finally granted. It now appears, accord-

ing to the argument of counsel for complainants, that what De Long really invented was the means for preventing the ancillary hook from sticking into the garment, and the eye from slipping behind said tongue, and which consisted in turning up the point of said tongue. But Fig. 2 of the original drawings, and the patent itself, indicate that he did not think of or claim a nonabrading hook; and complainants' expert admits, as to the protection of the eye, that one of the figures of said Rodgers patent illustrates a construction which "possesses the same advantages, namely, that the eye cannot get on the wrong side of the tongue," and that, if one were to bend it up so as to get it out of the way of the garment, he would make the invention of the patent in suit. The applicant had the right to select as to which of two courses he would pursue in the patent office. He could then insist, as his counsel now insist, that his invention resided merely in bending up the point of the tongue of the prior art, or he could abandon or ignore this feature, and differentiate his construction from the prior art by so extending the tongue beyond prior constructions as to form an auxiliary, reinforcing loop, coincident with the bend of said hook. He chose the latter alternative. Thereby he has strengthened the claim of novelty in his patent, but narrowed its scope.

But it is further contended that the patent office was mistaken in its view as to the effect of the earlier constructions. It would seem, in view of its references, and of the Federhaken, Tyler, Rodgers, and other constructions, that the examiner was right, and that Judge Colt, in his opinion sustaining the patent in suit, took this view. He says:

"The Rodgers hook has a yielding, resilient, humped tongue, and to this extent is similar to the De Long structure; but the end of the tongue, in this hook, is not carried around the bend of the hook. There are two defects in the Rodgers hook: First, the end of the tongue, when the eye is inserted in the hook, is pressed down below the plane of the shank of the hook, and, coming in contact with the fabric, tends to abrade it; and, second, in inserting the eye in the hook the spring tongue may become bent or displaced, in which case the eye, in attempting to unhook it, may pass behind or under the end of the tongue, and so prevent the disengagement of the eye from the hook." Richardson v. Shepard, 60 Fed. 273.

In the arguments of counsel for complainants it is said that neither the patent nor the file wrapper say how far the tongue must extend around the bend of the hook. But when the patentee claims and illustrates a tongue having its free end forming a loop coincident with the bend of the hook, having explained that what he meant thereby was such a loop as to engage and afford a seat for the eye, and thus afford a triple bend to strengthen the hook, it is evident that no other construction will infringe, unless it performs some one of these functions in the same way.

Counsel further cite from the able and exhaustive opinion of Judge Putnam in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, to support the claim that De Long should not be estopped to claim infringement herein by reason of the statements in the file wrapper and contents. But that was a case involving the application of the broad doctrine of equivalents to a

pioneer patent, where amendments were made, not upon citation of anticipations, but upon a theory of the examiner that the claims must conform to the operation explained in the specification. Here the alleged invention covers a mere change of form, and was thus amended upon citation of references involving the question of novelty. The rule applicable in such cases is stated in said opinion by Judge Putnam, quoting from Ball & Socket-Fastener Co. v. Ball Glove-Fastener Co., 7 C. C. A. 498, 58 Fed. 818, as follows:

"The rule touching the effect of such amendments has been several times laid down by the supreme court in patent causes, although it is only a peculiar application of the general principles of law relative to the interpretation of instruments. In the case at bar the amendments relate to the very pith and marrow of the alleged improvement, touch directly the question of novelty, and were understandingly and deliberately assented to, so that the rule of interpretation referred to undoubtedly applies."

Judge Putnam adds that the application of this rule "when the invention is in mere matter of form or detail would be more freely made than when it is of a broad character."

The tongue of defendant's hook is slightly longer than that of Rodgers, and the end is sufficiently curved so that it will not abrade the cloth. In defendant's hook, there is not the "tongue having its free end forming a loop coincident with the bend of the hook," as claimed; there is practically no "auxiliary hook serving as a reinforce to the main hook," certainly none in the sense in which applicant described it, "so that the eye * * * engages with both the looped extension, C, and the bends, d; said extension increasing the strength of the hook, as is evident"; and the eye is not "seated both in the bend, D, and the loop, C." Were it essential to the decision herein, it might be further shown, from the state of the prior art, that other devices, such as those of Tyler, Jenkins, Federhaken, Church, and Mason, approached so closely to the defendant's construction that De Long could not have protected it by a valid patent. These considerations, however, are only here referred to as tending to show that the De Long invention was in no sense of a primary character. Complainants' expert admits that the only structural change necessary in Fig. 26 of the Rodgers patent, in order to bring it within the invention of the patent in suit, would be to bend the elongated end of the tongue so as to make it coincident with the bend of the hook, and that if you took the hook of Fig. 26, "and found that the straight end of the tongue stuck into your garment, and bent it up so as to get it out of the way, you would make the invention of the patent in suit."

Counsel for complainants further argue that the defendant "has what the complainants contributed to the art, and gets it by having 'a tongue whose free end forms a loop coincident with the bend of the hook' for a certain distance." There are several answers to this argument. The bend in the tongue does not form a loop, which is defined to be "a fold or doubling of a string, etc., in such a manner as to form an eye or a curve through which something may be passed, as a hook or another cord." But if, in the sense of "a curve or bend of any kind," it does form a loop, and if such a loop is coincident with

the bend of the hook for a certain distance,—which I very much doubt,—yet, the patentee is estopped, as already shown, to cover such loop, unless the certain distance during which it is coincident either covers the whole of the bend, or so much thereof that the loop may serve as a seat for the eye, and thus increase the strength of the hook. And if this were not so, and the alleged invention could be construed to consist in what the inventor originally ignored,—that is, in merely turning up such prolongation of the tongue,—there is, at most, nothing more than the skill of the mechanic, in view of the prior art. In any event, the applicant—having presented to him the direct issue of novelty, in view of the prior art, and having failed to claim the upturned end, and having elected to show, describe, claim, and insist upon his invention as consisting in a certain kind of loop, having certain definite functions—is bound by his admission, and is not now in a position to claim that his invention consisted in a mere lengthening and upturning of the end of the tongue, sufficient to prevent abrading the cloth.

Finally, the evidence fails to establish that the alleged defects of the earlier hooks caused the falling off in the sales thereof, or that the alleged advantages of the patented hooks account for their popularity. On the contrary, the changes in women's fashions, and extensive advertising, not of the patented improvement, but of the hump, appear to have contributed largely to its success. Like the Orum lock, in Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, it was put upon the market just at the time when the public were looking for a hook of this description, and the eye of the people was caught by an alluring trade-mark and seductive signs. Let the bill be dismissed.