GREENE et al. v. BUCKLEY et al.

SAME v. MANHATTAN REFRIGERATING CO.

(Circuit Court of Appeals, Second Circuit. December 2, 1904.)

Nos. 10, 11.

1. PATENTS—CONSTRUCTION OF CLAIMS—EFFECT OF PROCEEDINGS IN PATENT OFFICE.

Where a patentee acquiesces in a rejection of claims by the Patent Office, and amends the same so as to be more specific, such claims must be read and interpreted with reference to the rejected claims and to the prior state of the art, and cannot be so construed as to cover either what was rejected or disclosed by prior devices.

2. SAME—INFRINGEMENT—AUTOMATIC LUBRICATORS.

The Buckley patent, No. 590,297, for a force-feed lubricator, the object of the invention being to provide means whereby several machines may be automatically supplied from a single lubricator, and the quantity of oil fed to each regulated, covers merely a convenient combination of old devices, performing their old functions and accomplishing their old results in their old way, equipped with a specific construction of the connection between the crosshead or reciprocating member of the machine which operates the forcing pistons and the piston rods, whereby a slip movement is secured, and the length of piston stroke may be varied with reference to that of the crosshead, which remains constant; and, in view of the proceedings in the Patent Office and the prior art, the claims must be limited to such specific means of adjustment. As so construed, *held* not infringed.

Appeals from the Circuit Court of the United States for the Western and Southern Districts of New York.

This cause comes here on appeal from two decrees of the United States Circuit Court for the Southern and Western Districts of New York, respectively (120 Fed. 952, 955), adjudging the validity of complainants' patent No. 590,297, granted to John Buckley, September 21, 1897, and finding infringement, and directing an injunction and accounting.

Geo. W. Hey and Arthur L. Parsons, for appellants.
W. H. L. Lee and B. F. Lee, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. In the suit against Buckley et al. it was contended in the court below that certain defendants were individually liable. The court dismissed the bill as to them, and no appeal was taken from said decision. The issues on this appeal, therefore, are the same in both cases.

The Manhattan Refrigerating Company is a user of the alleged infringing machines. The Sterling Lubricator Company is the manufacturer thereof, and has assumed and conducted the defense in both cases.

The patentee says:

"My present invention relates to lubricators particularly of the kind known as 'force-feed,' and it has for its object to provide means whereby several engines or machines may be supplied with lubricant from a single lubricator, and the quantity of oil fed to each regulated to a nicety. * * * In my device I provide a single construction, embodying one movable part operated from any convenient prime mover, as the engine itself, and connected with this part are independently-adjustable feeding devices, as pumps, so that by means of the adjustments the operator can regulate not only the exact quantity that is required for any moving parts without stopping the operation of the movable part or device, but the frequency with which this quantity is supplied."

The claims in suit are the following:

"(1) In a lubricator, the combination with the reservoir, the cylinder outside of the latter, having the inlet-passage leading from the cylinder, the check-valve therein, and the exit-passage having the check-valve therein, of the piston operating in the cylinder, the reciprocating crosshead having a constant stroke, and the relatively-adjustable stops between the opposite sides of the head and the piston, whereby the strokes of the piston may be adjusted to any portion of that of the head, substantially as described.

"(2) In a lubricator, the combination with the reservoir, of the two cylinders outside of the reservoir, inlet and exit passages for the cylinders, and check-valves therein, the two pistons, 4, operating in the cylinders, the reciprocating crosshead, 7, and the relatively-adjustable stops on each of the pistons with which the crosshead engages, substantially as described.

"(3) In a lubricator, the combination with a reservoir, two pump-cylinders having supply and discharge passages and valves therein, of a reciprocating member, as a crosshead, two pistons operating in the cylinders having the collars and adjustable nuts thereon, co-operating with the member, whereby the stroke of the pistons may be independently regulated, substantially as described."

"(6) In a lubricator, the combination with the reservoir, a pump-cylinder, inlet and discharge passages and valves therein, of the piston operating in the cylinder, the reciprocating member, as a crosshead, adjustable slip connections between the piston and reciprocating member for regulating the length of stroke of the former relative to the length of stroke of the latter, the cam-wheel actuating the member, an actuating device for the cam-wheel, as rod, 29, and adjustable connections between said actuating device and the cam-wheel, whereby the speed of the cam-wheel may be adjusted relative to the speed of the actuating device, substantially as described.

"(7) In a lubricator, the combination with the reservoir, two pump-cylinders, inlet and discharge passages and valves therein, and pistons operating in the cylinders, of a rotary cam-wheel, a reciprocating member, as a crosshead, actuated from the cam-wheel, independent adjustable slip connections between each of the pistons and said member for regulating their stroke relative to the length of stroke of the member, actuating devices, as a rod, 29, for rotating the cam-wheel, and adjustable connections between said actuating devices and the wheel, whereby the speed of the cam-wheel may be changed, substantially as described."

A force-feed lubricator is merely a pump device for supplying oil to an engine where pressure is required in order to positively force the oil from the source of supply to the parts to be lubricated. The operating piston of the lubricating pump is operatively connected with some moving part of said engine. It is often desirable to supply to the different working parts of an engine varying quantities of oil, adapted to the requirements of varying high and low pressures, or varying frequencies of operation. The object of the patentee was to provide such a lubricator, in compact form, in a single device, capable of convenient application and adjustment, and comprising such adjustable devices for regulating the supply of oil as to secure economy of operation of the device, and a saving in the amount of oil required. This result he secured by what is appropriately characterized by counsel for complainants as a "self-contained" device, which comprised an oil reservoir and pump mechanism in a single structure, said pump mechanism being located outside of said reservoir, so as to be easily accessible, having check valves to control the flow of oil from the reservoir to the pump cylinders, and from the pump cylinders to the place of use; thus permitting easy and accurate adjustment of the quantity of oil delivered. Each pump piston receives its motion from a reciprocating member, such as a crosshead, which is given under all circumstances a constant length of stroke. Each pump piston is adjustably connected with the crosshead, so that the length of stroke of the piston may be variable, although the length of stroke of the crosshead as aforesaid is uniform. By thus varying the length of stroke of the pump piston the quantitative supply of oil thereby can be regulated. This feature relating to

quantitative adjustment may be best understood by an inspection of Fig. 2 of the patent in suit, which shows a double lubricator:

The oil reservoir, 1, is provided at one side of its base with an enlargement, in which are bored cylinders, 3. Pistons, 4, provided with fixed collars or stops, 6, operate in said cylinders. The upper ends of the pistons pass through a movable crosshead, 7, locked to the piston by screw nuts, 12, so pivotally connected by means of a pitman, 8, and a cam, 9, to a driving wheel (not shown in the drawing), that when said wheel is rotated the crosshead will have a constant vertical movement. When the pump is operated the oil is forced from the reservoir through 17, past the check valves, 16 and 14, out of the cylinder through the passage, 19, to the portion of the machine to be lubricated.

It will be observed that in Fig. 2 the crosshead is in direct contact at the left with the collar, while on the right they are separated by an intervening space, 4. This adjustment is accomplished by screwing the adjustable head up on the right-hand piston. This arrangement illustrates the graduating feature of the patent.

When the pump is operated, the left-hand piston, being rigidly connected with the crosshead between the fixed collar and the nut, travels the full length of stroke imparted to the crosshead by the driving mechanism, while in the right-hand piston there is a lost motion while the crosshead is making the slip movement along the piston and until it contacts with the nut. Because of this adjustable slip connection the piston remains stationary, while the crosshead has a constant, unvarying movement; and, by this means of relatively regulating the length of one stroke to that of the other, any desired quantitative ad-

justment of the supply of lubricant may be secured. Not only is quantitative adjustment thus provided for, but speed adjustment also is effected by varying the time required for the reciprocating member or crosshead in making its reciprocations.

This latter construction, in its single and double form, is covered by the latter clauses of claims 6 and 7, respectively. But because the patentee admits that these means are not new, but are substantially the same as those described in a prior patent, and that any other suitable form of actuating device may be employed, and because counsel for complainants assert that the corresponding device employed by defendant is old in the art, this branch of the case will not be further discussed.

The principal issue is that of infringement. The determination of that question depends upon the status of the patent, and the interpretation of the claims and their scope, in view of the file wrapper and the prior art.

The following facts are admitted or proved: (1) That there is not a single novel element in the combination of the patent in suit was admitted by counsel for complainants on the argument, and is proved by the record. (2) That the patentee originally believed himself entitled to cover broadly adjustable connections, and acquiesced in the action of the Patent Office in limiting his claims to a certain definite construction, is shown by the file wrapper and contents of the patent. (3) That the defendants' adjusting device for varying the length of the stroke of the piston is old, and is found in the Fraser British patent, is specifically admitted by counsel for complainants. (4) That the Harlow prior patent discloses a double-way force-feed lubricator, and that single-feed lubricators made under said patent were in use prior to the invention of the patent in suit, is also admitted. (5) That the real advance over the prior art accomplished by the patentee consisted in providing a double or multiple way lubricator, better and more convenient than the single lubricator of the prior art, appears from the evidence, and is practically admitted by counsel for complainants. (6) That commercially successful single force-feed lubricators were manufactured and sold prior to the date of the alleged invention of the patent abundantly appears from the record, and is admitted by the former manager of complainants' predecessor in this business.

Referring to April, 1897, the date when he first commenced to sell lubricators for complainants' predecessor, he testified that he did not sell lubricators made under the patent in suit until June, 1897, because he "had a large stock of the other style of lubricator (the prior single force feed), and was anxious to get rid of them." He then testified as follows:

"X–Q. 197. Even though you knew they gave you more or less trouble, owing to the lack of adjustment, and when you were just starting, as you say, to introduce force-feed lubricators in New England? A. Yes; because by using different styles of cams they could be adjusted to suit the engine or pump upon which they were placed, and would do good work. X–Q. 198. What was the reason of the return by you to the Rochester Company of these lubricators which did not have the piston adjustment; that is, had cams removable and of different sizes for adjusting the throw or throws of the piston? A. Because the lubricator with the adjustable plunger was a great deal more convenient to install and regulate."

The defendants' lubricator secures all the material advantages possessed by that of the patent in suit. Disregarding minor immaterial differences of construction, and similarities of construction negligible and immaterial because found in the common prior art, the essential feature relied on to support the charge of infringement is the adjustable connection between the cam and the piston, which enables the stroke of the piston to be varied at will. This connection comprises a rocker arm pivoted to a stud above the cam, the ends of which move up and down in a curved path. The rocker arm is slotted to receive a link connecting it with the piston. This link may be moved to any desired point on the slotted arm, and fastened by means of a set screw. Thus the piston may be given a longer or shorter range of motion, dependent upon the distance of the fastened extremity of the link from the center of motion of the rocker arm. The defendant Buckley admits that the functions and objects of defendants' rocker arm and of complainants' crosshead are the same.

The details of construction for regulating the speed adjustment need not be considered, for reasons stated above.

In considering the patent and comparing the respective adjusting devices, it is to be noted in the first place, as complainants' expert asserts, that "the particular means for adjustment was not new, and it and the corresponding means employed in the defendants' lubricators were known equivalent means for adjustment." Admitting that the defendants' adjusting devices are unlike those of complainants, he refers to the prior Fraser British patent, No. 16,940, as follows:

"This patent is interesting, as showing the particular means for adjusting the extent of stroke of a pump piston which is employed in the defendant's lubricators, and it confirms my opinion expressed in my original deposition to the effect that this means of adjustment is the equivalent of the specific adjustment used for the same purpose set forth in the Buckley patent."

The application originally contained 10 claims. Of these, all except the tenth claim (now claim 3) were rejected and amended. Claim 3 covered the specific details of construction set forth in the specification and shown in the drawings, namely, the crosshead, pistons, provided with fixed collars and adjustable nuts, and so co-operating with the crosshead that the strokes of the pistons may be independently regulated. The second claim covers a duplication of the parts of the first claim, and they will be considered together.

The first and second claims originally covered broadly the combination of crosshead or connector, having a determined stroke, and "the piston and adjustable connections between said piston and the reciprocating member" (the crosshead). These two claims and claims 4 and 5 were rejected on Harlow patent, No. 295,919. This patent covers a double force-feed lubricator, as appears from the language of the first claim, which is as follows:

"(1) In a lubricator, the reservoir having two or more outlet-passages, combined with a series of independent forcing devices actuated in common, by means of which different quantities of the lubricant may be forced from each outlet as desired, substantially as described."

The specifications describe and the drawings show a rocker shaft connected with the actuating rods of the pump device, said rods being provided with milled heads or threaded portions, which engage with

their guides by means of jamb nuts, and thereby the quantity of oil delivered at each stroke of the pump piston may be regulated and adjusted. The applicant thereupon canceled said broad claims 1 and 2, and substituted the limited ones of the patent in suit. He also attempted to differentiate claim 5 from Harlow, on which it had been rejected, and to differentiate claims 6 and 7 from the references cited, on which they had been rejected. Claims 5, 6, and 7 were again rejected. The applicant then partially acquiesced in the rulings of the Patent Office, and amended claims 6 and 7 by limiting them to a construction for regulating the length of stroke of the piston relative to the length of stroke of the crosshead. This amendment was made after the assertion by the applicant that his invention was differentiated from Harlow and Carlson, based on the following argument:

"These amendments are believed to clearly distinguish my invention from the references, as in neither the Harlow or Carlson patents is the length of the stroke of the piston capable of regulation relative to the length of the stroke of the reciprocating member, but, on the contrary, whatever the adjustment of the pistons relative to their piston rods, the pistons move the same distance as the actuating rods. This difference is important, as in the combinations covered by these claims I am enabled to regulate not only the quantity of oil fed by each piston, but the speed, as well, even when the prime mover operates at a constant speed."

The Patent Office, however, again rejected said claims 6 and 7, and they were only allowed after acceptance of its suggestion and subsequent requirement that they be amended "by indicating that the crosshead has free movement between the adjusting nuts, 12, and the stop, 6," because—

"There can be no regulating of the stroke of the piston relative to the length of the stroke of the crosshead if the crosshead does not have free movement between the adjusting nuts, 12, and the stop, 6, and therefore the claims should bring out the fact that said crosshead has such movement."

The amendment introduced in conformity with this requirement provided in claim 6 for "adjustable slip connections between the piston and reciprocating member for regulating the length of stroke of the former relative to the length of stroke of the latter."

The amendment of claim 7 is practically the same as above.

It thus appears that the patentee, having originally covered his real invention by the last of the original 10 claims, and having unwarrantably attempted by said other claims to cover a broader invention, secured a patent for certain other claims, limited to the definite construction shown and described in his application. In so doing he has committed himself to a definite interpretation of "the relatively adjustable stops" for regulating the length of the stroke of the piston relative to the length of the stroke of the crosshead, and by means of "adjustable slip connections." In addition to the foregoing limitations imposed by the Patent Office, further limitations upon the scope of the patent in suit are required by other disclosures of the prior art. Thus Bischoff patent, No. 368,702, shows a single force-feed lubricator provided with pistons moved back and forth by a connection such as is shown in the device in controversy, one of said pistons being secured to the actuating frame, while the other is so connected therewith by a neck and collar that the frame moves for a certain distance on the piston without moving

the piston. But it does not appear to disclose any means for adjusting the quantity of the oil supply, and, despite the assertions of defendant's expert to the contrary, it is doubtful whether such adjustment could be provided so as to be practically operative without the exercise of invention, especially in·view of the presence of an operating finger, not used by Buckley, but apparently essential in Bischoff.

Felthousen patent, No. 215,271, with Bischoff and Harlow, chiefly relied on by counsel for defendants, shows a single force-feed lubricator equipped with a device for regulating the frequency of stroke practically identical with that covered by claim 6 of the patent in suit. It also shows a serrated bar, which forces a piston rod beyond an opening from the oil reservoir, and thus pumps the oil to the place of use. This piston is adjustably connected to the socket in said bar, and by means of a set screw the length of the stroke of the piston may be adjusted. The patentee says:

"It is therefore self-evident that the two extremes of this pump being a delivery of oil or lubricant equaling the full stroke of the piston in one case, or none at all in the other case, an adjustment between the two extremes may be made to any quantity of lubricant, ranging from nothing up to the full stroke of the piston, and that this adjustment can be effected, irrespective of the length of stroke or the number of strokes of the piston, by simply pushing the piston, D, farther into or withdrawing it out of the socket, Q, to the desired point."

Confronted by this exhibit, the court called on counsel for complainants to differentiate it from the single force pump claims of the patent in suit. We were referred to the brief for a full discussion, upon examination of which we find only the following statement:

"Patent to Felthousen, No. 215,271, dated May 13, 1879, shows substantially the same quantitative adjustment of oil supply as is shown in the Siegrist British and United States patents. There is substantially the same relative adjustment between the pump piston and the oil-supply passage. The pump piston has a uniform stroke. The quantity of oil supplied is varied by adjusting the effective portion of such stroke."

The Siegrist patents were not discussed or explained by either counsel on the argument, no model was produced, and in complainants' brief it is stated as follows:

"Considering the Siegrist structure as a whole, it belongs in .the category of complex and intricate mechanisms, where much ingenuity has been wasted in producing a machine of no value. It is a case of misdirected energy."

In these circumstances we are not disposed to critically discuss the Siegrist patent, but prefer to rest our conclusions as to the Felthousen patent upon what is disclosed by its specification and drawings, as above stated. It is evident, however, from a mere inspection of the Siegrist patent, that it shows a force-feed lubricator provided with pistons connected with a reciprocating crosshead by adjustable nuts on opposite sides of the crosshead.

Finally, this is not a case of attempted anticipation or limitation by mere paper patents.

Complainants' expert testifies as follows:

"X–Q. 112. As I understand your testimony relating to Mr. Wilhelm's consideration of the prior art in this cause, the prior art was quite replete with various types of both single and double force-feed lubricators, some of which were self-contained, in the sense in which you have employed this term, and

others were made of segregated parts requiring support upon different parts of the machine to be lubricated, for example, and that you have defined the invention of the Buckley patent to reside in the combinations which are recited in the claims in issue here. Am I correct in this idea? A. Yes. X–Q. 114. I call your attention to the lubricator exhibit introduced on behalf of the complainants and marked, 'Complainants' Exhibit J. & B. Cup No. 3, Jany. 30, 1902, J. A. S., Examiner,' and ask you if that lubricator is a compact, self-contained force-feed lubricator? A. Yes. X–Q. 115. And what does that lubricator lack to disclose the invention of claims 1 and 6 of the Buckley patent? A. I cannot tell whether this exhibit has check valves in the inlet and outlet passages, but, assuming it to have such valves, it has no means for adjusting the piston so as to secure a variable length of stroke, and consequently it does not have the subject-matter of claims 1 and 6."

We have already seen, from the admissions of complainants' manager, that the J. & B. cups were practical devices and did good work.

It is further admitted that:

"Certain Harlow and Moses single-way lubricators had a mushroom existence. A few of them were in actual use, but the manufacture thereof had been abandoned, and none were on the market, when the Rochester Automatic Lubricators of the Knipper & Knipper 1894 and the Butler 1896 patents appeared. The Harlow lubricators seen by Sherry were single-way lubricators. So far as the double lubricator is concerned, therefore, the Harlow patent is certainly a 'paper patent.' The Harlow single lubricators seen by Sherry were certainly not the exact thing shown in the Harlow 1884 patent, which is a two-way lubricator."

With the light afforded by the foregoing discussion, the contentions of complainants will be again examined.

(1) The Buckley lubricator is a self-contained device, and therefore convenient for general application to different machines without reorganization. But as it is asserted and admitted that none of the elements which constituted this convenient combination were new, or performed any new function, or accomplished any new result, except that they were more salable, because more convenient, this contention is insufficient.

(2) The same may be said of the fact that the operating mechanism is outside of the oil reservoir, so as to be readily accessible.

(3) There is nothing new in check valves to control the flow of a fluid. That "this organization is important, * * * enabling very free adjustments to be effected," etc., is immaterial upon the question of patentable novelty. It is not the result, but the novel means, which are the subject of a patent.

(4) The arrangement by which each piston is so adjustably connected with the crosshead that the length of stroke of the piston may be variable, although the length of stroke of the crosshead is uniform, appears to be novel, in this connection, and will be discussed later.

(5) The provision for speed adjustment, as distinguished from quantitative adjustment, is confessedly old.

(6) The contention that the Buckley double lubricator involved invention, because the operating mechanism was not duplicated, was not pressed on the argument, and need not be discussed. A double force-feed lubricator was not novel, but was described in the Harlow patent, as already stated.

The claims of the patent, therefore, cannot cover broadly adjustable connections for regulating the stroke of the piston, because the patentee

acquiesced in the action of the Patent Office in rejecting claims therefor, and because such connections are shown in Harlow and Felthousen. They cannot cover the speed-adjusting devices of claims 6 and 7, because they are confessedly old. They must be limited, then, to the reciprocating crosshead, having a constant stroke, and the relatively adjustable stops between the opposite sides of the head and the piston, whereby the strokes of the piston may be adjusted to any portion of the head, of claims 1 and 2, to the specific crosshead, pistons, collars, and nuts of claim 3, and the adjustable slip connections between the piston and reciprocating member for regulating the length of the stroke of the former relative to the length of the stroke of the latter of claims 6 and 7.

It is believed that a mere comparison of complainants' and defendants' devices, in connection with the admissions of the patentee and of the witnesses and counsel for complainants, establishes noninfringement. Aside from the minor differences that the pumps of defendants' lubricator are not outside of the reservoir, and are not connected by inlet passages having check valves therein, the defendants' rocker arm and connections is not the reciprocating crosshead having a constant stroke and connections of the patent, because the stroke of the rocker arm is not constant, but variant, according to the distance of the point of connection from the center of its motion, and "the length of the stroke of the piston" is not "capable of regulation relative to the length of the stroke of the reciprocating member." See file wrapper and claims. As to this difference, complainants' expert testifies as follows:

"X–Q. 93. And the movement of the pistons in the Buckley structure in relation to the movement of the crosshead in respect to the corresponding two parts of the sterling lubricator exhibit is in marked contrast in the respect set forth in my last question; that is, that in the Buckley device the movement of the cross-head is variable with the movement of the piston, and in the Sterling it is constant with the piston. Is not that true? A. The facts stated in the question are true."

There are therefore no "relatively adjustable stops * * * whereby the stroke of the piston may be adjusted to any portion of that of the head," and there are no "stops between opposite sides of the head and the piston." There are no pistons "having the collars and adjustable nuts thereon," such as are described in the patent.

But complainants' expert, being obliged to admit that the result is old, seeks to establish infringement by the assertion of equivalency of function in the two devices for accomplishing the adjustment of length of stroke. In order to do this he is forced to argue, in reference to the "independent adjustable slipping connections," that:

"The Sterling double lubricator has such independent adjustable slip connections, the connections being arranged as already described, so as to slip along the reciprocating member aforesaid, so as to effect the adjustment."

But he is forced to make the following admission:

"X–Q. 89. But as a matter of fact, the piston is connected to the crosshead in the Sterling single lubricator, so that the part you call the link has no slip on the crosshead when the crosshead itself is rocked, and to this extent the connection with the crosshead is fixed? A. Yes. * * * X–Q. 260. That is to say, you do not find in the Sterling lubricators, or either of them, a crosshead reciprocating lengthwise of one or more pistons operated by said

crosshead with a lost motion; that is, by slipping along one or both of the pistons for a limited distance?° A. No; but I do find an equivalent construction and arrangement in the Sterling lubricator. X–Q. 261. The question is, however, if the Buckley claims must be construed as limited to such crosshead and connections between the crosshead and pistons, as described in the last two questions, and said claims are not entitled to the doctrine of equivalents, would you then find that such claims of the subject-matter thereof were included in the Sterling lubricators, or either of them? A. Certainly not."

It will be remembered that the patentee, while making his application, definitely committed himself to an interpretation of this slip movement as one accomplished by means of lost motion secured by the slip and free movement of the crosshead along the pistons between the adjusting nuts and stops, the piston meanwhile not being moved, in order to regulate the relative length of stroke of piston and crosshead. The patentee therefore cannot now contend that his invention covers a device where there is no slip—in fact, no lost motion—and where the change in adjustment does not affect the relative length of stroke of the two members, but where all movement of the rocking lever is transmitted to pistons, which move continuously during the operation of the device.

Complainants' expert testifies as follows:

"X–Q. 116. Assuming that this exhibit J. & B. Cup, No. 3, was constructed in strict accordance with Defendant's Exhibit Butler Patent, No. 564,502, dated July 21, 1896, in all particulars, excepting that the enlargement of the base is bored for two pump barrels, and the necessary valves shown in Fig. 5 of the patent drawing are provided for each barrel, and a reciprocating crosshead, with two pistons connected thereto with nuts on each side of the crosshead, as is shown, for instance, in the Siegrist patent, excepting that the crosshead is reciprocated with a cam, should you say that the J. & B. cup, thus modified, would contain the invention of claims 1, 2, 3, 6, and 7 of the Buckley patent in suit? If not, why? A. It seems to me that the structure contemplated by the question would be substantially that of the Buckley patent in suit, excepting that two nuts would be provided for each piston above and below the crosshead; and, for reasons heretofore stated by me, I do not think that such an arrangement would be feasible or practical if the pistons should be adjusted to anything except their maximum strokes, since they would not retain their adjusted positions. Aside from this consideration, I think that the assumed structure would embody the subject-matter of each of the claims in question. X–Q. 117. The only thing the hypothetical structure of the preceding question would lack would be the fixed collars on the pistons and the two adjustable nuts on each piston for the opposite side of the crosshead. Am I right as to this? A. Yes; or some equivalent retaining means to maintain the adjustment."

The facts herein exclude the application of the doctrine of equivalents. The patentee has limited himself to a specific construction. Even if defendants' adjusting device is the functional equivalent thereof, it is found in the prior art. The patent in suit merely covers a convenient combination of old devices, performing their old functions and accomplishing their old results in the old way equipped with a specific construction of collars and nuts, so arranged as to secure relative adjustment through the lost motion involved in the slip movement.

The claims of a patent covering a mere improvement upon prior machines, which were capable of accomplishing the same general result, must receive a narrow interpretation. Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715. In such cases the patentee cannot treat another as an infringer, who has im-

proved the original machine by use of a different form or combination performing the same function. McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930. Where the result is old, and the novelty consists only of improvements in a known machine for producing a known result, the patentee must be tied down strictly to the mode which he has described for effecting such improvements. Proctor v. Bennis, 36 Chancery Division, 740, cited with approval in Morley Sewing Machine Co. v. Lancaster, supra.

Where it appears from the proceedings in the Patent Office and a consideration of the state of the art that a patent is not a pioneer patent, its claims must be limited in their scope to the actual combination of essential parts as shown, and cannot be construed to cover other combinations of elements, of different construction and arrangements. In such cases there should be identity of means and identity of operation combined with identity of result, in order to constitute infringement. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 19, 23 Sup. Ct. 521, 47 L. Ed. 689. And where the patentee specifies a particular form as a means by which the effect of the invention is produced, or otherwise confines himself to a particular form of what he describes, he is limited thereby in his claim for infringement. Walker on Patents (4th Ed.) § 363, and cases cited. Where a patentee acquiesces in a rejection of claims, and amends the same so as to be more specific, such claims must be read and interpreted with reference to the rejected claims and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices. Knapp v. Morss, 150 U. S. 221, 225, 14 Sup. Ct. 81, 37 L. Ed. 1059; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382. "Where a patentee has modified his claim in obedience to the requirements of the Patent Office, he cannot have for it an extended construction which has been rejected by the Patent Office; and in a suit on his patent his claim must be limited, where it is a combination of parts, to a combination of all the elements which he has included in his claim as necessarily constituting that combination." Phœnix Caster Co. v. Spiegel, 133 U. S. 360, 368, 10 Sup. Ct. 409, 33 L. Ed. 663. The words of limitation inserted in a claim must be construed in the light of the circumstances surrounding the issuance of the patent, in order to prevent an undue broadening of the scope of the invention. Singer Manufacturing Co. v. Cramer, 192 U. S. 265, 285, 24 Sup. Ct. 291, 48 L. Ed. 437. In interpreting such a patent, the admissions and declarations of the patentee in the Patent Office, and amendments made by him which relate to the essence of alleged improvements, and are directed to the question of invalidity, when understandingly and deliberately assented to, are binding upon him. Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 61 Fed. 958, 10 C. C. A. 194; Walter A. Wood Mowing & Reaping Mach. Co. v. William Deering & Co. (C. C.) 66 Fed. 547; Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 58 Fed. 818, 7 C. C. A. 498.

The decree is reversed, with costs.