## THOMAS v. ROCKER SPRING CO.

(Circuit Court of Appeals, Sixth Circuit. October 12, 1896.)

### No. 395.

1. PATENTS—ACQUIESCENCE IN EXAMINER'S RULINGS — LIMITATION OF CLAIMS.
   An applicant, after inserting limitations in the specifications and claims pursuant to the requirements of the examiner, cannot qualify or minimize the effect of his acquiescence by protesting that the action taken was not an acquiescence, and that he expects to insist on a construction of the amended claims which will cover the same ground as the rejected claims. If he dissents from the examiner's ruling, he should take the question to the appellate tribunals of the patent office, and thence to the courts. 68 Fed. 196, reversed.

2. SAME—LIMITATION—TILTING CHAIRS.
   The Connolly patent, No. 354,043, for a "tilting and rocking chair," is not for an invention of a primary character entitled to a wide range of equivalents;

and in view of the prior state of the art, and of the proceedings and ruling had in the patent office, must be limited to the use of a spiral spring in a chair with a tilting and revolving seat, and therefore does not cover platform rocking chairs having spiral springs. 68 Fed. 196, reversed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This is an appeal in a patent case. The patent sued on is for certain spring attachments to "a tilting or rocking chair." The defendant's spring attachments charged to be infringements are used on platform rocking chairs. He contends that he does not infringe, because the patent sued on is so limited in its scope by reason of the proceedings in the patent office prior to its allowance that it cannot and does not cover springs used in platform rocking chairs. A platform rocking chair is the common form of chair with rockers formed by an extension downward of the sides of the chair, and resting either on a platform or base rails. The defendant's claim is that complainant's patent covers only a device for regulating the tilting and rocking motion of a tilting and revolving office chair, and that the proceedings in the patent office preclude the court from giving it a wider construction. This contention presents the sole question which the court finds it necessary to consider in the case.

The Rocker Spring Company, the complainant below, became the owner of the patent in suit by assignment of one Bunker, who was himself the assignee of the inventors, M. D. and Thomas A. Connolly. The inventors were brothers, engaged in the practice of the patent law in Philadelphia, who, in 1876, conceived the idea of a tilting office chair with a base, a spindle revolving in the center of base, a spider supporting the seat, and a heavy spiral spring resting on the spindle and supporting the spider, and forming the only support of the seat part of the chair. The following figure will give an idea of the device.

A patent for this device, was issued in 1876, and is No. 185,501. The chair proved to be defective, in that the tilting motion was not confined to a forward and back movement; but was sidewise also. Thereafter the Connolly brothers made an improvement on the chair in which they sought to prevent the lateral movement by small rockers, which rocked on curved bases, and were placed on each side of the spring. The rockers were united so as to form a box inclosing the spring, called a "rocker box." This will be seen in the figure following:

Fig. 1

The Connolly brothers applied for a patent on this device. The specification stated that they had invented new and useful improvements "in tilting or rocking chairs." The object of the invention was stated as follows: "The object of our invention is to provide means whereby a chair can be rendered capable of being revolved upon a central supporting spindle, and also of being rocked thereon, the rocking motion being resisted in one direction and assisted in the other by a spring. A further object of our invention is to provide means whereby a chair provided with a spring located and applied substantially as shown in letters patent No. 185,501 of the United States may be prevented from tilting to either side, or moving independently of the spindle in any direction save rocking backwardly and forwardly. Our invention accordingly consists: First. In providing a rocker or rockers located between the spindle and spider, or seat of a chair, whereby a rocking as well as a revolving motion is secured. Second. In the combination with a spindle and spider connected by a spring located between them of rockers to permit a chair seat attached to or mounted on said spider to be rocked backwardly and forwardly and to prevent it from being tilted to either side or otherwise moved independently of the spindle. Third. In certain

details of construction and combination more fully specified in the following description and claim." In describing the construction of the chair, the specification said: "To prevent bending or rubbing, the boxes should be of an internal diameter, a fraction greater than the external or greatest diameter of the spring." With respect to the position of the spring, the specification contained the following: "We have shown the spring as directly over the spindle and directly under the center or union' of the spider, and this arrangement should in all cases be preserved."

One of the improvements claimed was the device for limiting the forward and backward movement. These were stops in front of and behind the central spring formed by extensions of the rocker box. They are shown in the figure above given at e 3 and e 4 in front and f 3 and f 4 behind. In stating the advantages of the chair, the applicants pointed out, among others, that thereby a perfect rocking motion had been obtained for a revolving chair, something not before accomplished; that, as the seat was made permanently fast to the spider, and the center of motion or joint was below the spider and over the spindle, and hence out of the way, there was no danger of contact with the clothing or limbs of the occupant; and that, as the whole device of the rocker box consisted of iron and steel, the invention might, in finished form, be sold to chairmakers, to be screwed in by them. It is evident that no arrangement or combination with a single spring was applicable to a platform rocker, because in such a chair there must be two rockers usually distant from each other the whole width of the seat. The original specification described the use of one spiral spring throughout, except that it mentioned the possibility of substituting two smaller springs to discharge as a substitute the function of the single spring. The mention was in the words following: "In Fig. 12 we have shown an arrangement by which two springs of light tension may be employed. These may be located within the rocker boxes, or on either side of a central upper rocker, or to an upper and a lower rocker. The figure referred to shows the lower support as being a flat plate, but such is not required."

Thirteen claims accompanied the specification. Nine of them were for combinations of the spider or spindle of a revolving chair with some other part of the mechanism; two were for the rocker boxes, adapted to receive a spring to connect the two parts of the same; another was for the rocker box with the stops; and the last was for the spring adapted to be fastened in the box. No claim was made specifically referring to the use of two springs. Objection was made by the patent office that a similar combination of springs and rockers appeared in the patents of Beiersdorf, issued in 1878, and of Beiersdorf and Bunker of 1879, for rocking chairs, and on these references the claims were rejected. To meet the objection, the applicants filed claims limited to combinations in a tilting chair. These having been rejected, other claims were filed for combinations in a tilting or oscillating chair. The original application was filed in 1880, and remained pending in the patent office until 1884, when the Connolly brothers sold the invention to one Bunker, who transferred it at once to the Rocker Spring Company. New counsel were employed in that year by the spring company, and new claims were filed. These claims were rejected, as being anticipated by prior patents. In a letter of August 1, 1884, asking a reconsideration, the wish of the then owners of the invention to dominate the spiral spring rigid connection between the base and the rockers of all kinds of rocking chairs, especially platform rockers, was first made manifest. In this letter counsel stated that the distinguishing feature of the invention was the use of a broad, short, stiff, spiral spring as the sole connecting medium between the main parts of "a tilting or platform rocking chair." The letter was accompanied by an affidavit of Bunker, president of the spring company, in which he stated that he had sold 1,600 pairs of such springs attached to platform rocking chairs in 1879, and many thousands afterwards. He added: "According to my present information, the Connollys were prior in point of time to myself and Mr. Beiersdorf in the making of this broad, short, stiff, spring attachment for platform rocking chairs, and I do not

know of anything connected with our own operations which should prevent the granting of their application." The evidence in this case discloses that the Connollys never made a platform rocking chair, or applied spiral springs to that kind of a chair. The claims were again rejected on reference to prior patents. Amendments were then proposed, but pending their consideration an interference was declared between Connolly's device and that of one Stevens. The interference covered only the use of one spring in a tilting chair. In March, 1885, therefore, the applicants filed under the original application a divisional application, with specifications and new drawings, for "certain new and useful improvements in spring attachments for rocking chairs," in which they sought a patent for the use of spiral springs in pairs on "platform rocking chairs." Every one of the four claims was an express claim for a combination in a "platform rocking chair." The claims were all rejected, on the ground that the specifications and claims embraced new matter not set forth or contemplated in the original specifications. Said the examiner: "It is nowhere indicated in the original case that a chair was contemplated by the inventor of a form ordinarily known as a platform or spring rocking chair, and, while the original case referred to a tilting and rocking office chair, the original description has, in this case, been so remodeled and strained by the use of new phrases and words that, while it is applied to a tilting and revolving rocking chair, it really aims at a spring rocker." The examiner then proceeds to show at great length why, under the original specifications and drawings, it was not within the intention of the inventors to cover in their invention a device for platform rockers, and that the changes in them made for the purpose of covering platform rockers were mere afterthoughts, and continued: "From all of which it appears that applicants originally proposed to interpose between the chair bottom and the spindle of a revolving chair, a central metal rocker box. In the form of spring rocker now intended to be covered by applicants' claim there is no central metal spring box, but an entirely different arrangement. There is simply a chair-seat part with side wooden rockers connected by rounds on which the rockers rest." The examiner rejected the new drawings in these words: "The new drawing is objected to for the reason that the spider has been omitted, and the rockers attached directly to the chair bottom. The springs are shown as attached to the inside of the rockers in a way not shown nor described in the original case, and the whole character of the drawing is different from the original, and of such a nature as to indicate a spring rocker, which form of chair is not shown by the original drawing." After commenting on the use of brackets in the new drawings to fasten rigidly the spiral springs to the sides of the rockers of the platform rocker, and concluding that this was not within the original device, the letter of the examiner proceeds: "It will be found upon a careful analysis of the original description that applicants proposed as an alternative in certain cases simply to locate two springs in the rocker box instead of one, and the only fair inference with respect to the fastening is that, if two springs were used, the second one would be secured in the same way as the first one; that is, to the top of the rocker box. There is one consideration which seems to preclude the possibility of it having been in the inventors' minds that the side brackets could be used in the rocker box, and that is that the top of the box afforded a satisfactory means for securing the springs, and it would be a mere duplication to add an alternative element for the same purpose, and in fact more for the worse than a mere duplication, as it would add just so much unnecessary expense and inconvenience. Another expression used in the description in this case to which exception is taken is as follows (see, for instance, claim 1): 'Spiral springs, one at the inside of each rocker.' The objection to the expression is that it permits and invites the implication that the rockers are separated some distance, as indicated in the figures of the new drawing, a construction not hinted at in the original case, but necessary to change the original office chair into a spring rocker. It was stated originally that two springs might be located in the rocker boxes, but it is nowhere hinted at in the original specification that the rockers were to be widely separated, or how the springs were to be related in the box. Under the original description, and as a new alternative, two springs might be located in the box; and whether the springs were to be placed side by side, or one in front of the other, or in any other position, was not specified.

It does not, therefore, seem proper that applicants should now, for the first time, of the many possible arrangements of springs, select, describe, and claim the only one which could cover the usual location of the springs in a spring rocker. Several of the criticisms herein made would, in an ordinary case, be comparatively unimportant, but in this case they must be gravely considered, because the enlargements proposed by applicants consist of several small changes per se, which, taken together, entirely reorganize the original invention."

The new drawings were changed to accord with those accompanying the original specifications, and the expression "tilting or rocking chair," as used in the original specification, was substituted in the claims. Other changes required by the examiner were made. The applicants, however, protested that in doing so they did not mean to narrow their claims, and expressed their astonishment at the rulings of the examiner. In a subsequent letter the examiner comments on the fact that, although astonished, the applicants recognized their force by recasting their specifications and claims so as to avoid the objections made. To this applicants replied: "Applicants respectfully dissent from the suggestion of the examiner that they have recognized the force of any of his actions, 'if not by words, by recasting this case so as to avoid the objections made.' Instead of this, in their desire for peace, they have merely recognized the propriety of using different forms of expression, not open to criticism even in a most refined view, to convey exactly the same meaning intended to be conveyed before. For instance, the examiner objecting to the expression 'platform rocking chair' (notwithstanding the claims of the original application, as approved by the former examiner and all of the examiners in chief, employ the terms 'platform,' 'rocking,' and 'chairs'), applicants have erased these words, and used others to express exactly the same idea; and substantially the same is true in reference to 'base rails' and other expressions. Not believing in any magic in words, or in the necessity of calling a chair a rocking chair in order to make it one, applicants have not intended by any verbal or formal changes to limit the scope or meaning of their claims now presented; and in all frankness they do not wish any other amendments to be so considered or understood. On the contrary, they do not consider that either of their claims is limited to special forms or details of construction, or to any particular kind of chairs, except, of course, chairs having rockers on the under side of the seat part, and corresponding rocker supports on the base part; and, in case this division be passed to issue, they desire it to be done with this understanding: that they intend its claims to cover, and understand them as covering, all forms of chairs having rockers and rocker supports to which their two-spring connection can be properly applied. This is exactly what they intend to say by the second paragraph preceding the claims of their substitute specification filed October 1, 1885,—the paragraph beginning, 'As the peculiar form,' etc., to which the examiner excepts; and it is exactly what they now intend to say by the paragraph since substituted in its place. Everything applicants have said or done, then, in the way of 'recasting this case so as to avoid the objections made,' has been in the line here suggested, but not with any thought of recognizing the force or soundness of such objections. In fact, as heretofore said, applicants consider their present specification and claims at least as broad as those first presented in this division. They now cover all kinds of chairs contemplated in their original application, platform rocking chairs, of course, included." To this the examiner replied: "With respect to the construction put on certain expressions used in the description by applicant in the argument attached to the substitute specification, it is sufficient to say that the office, of course, cannot govern the construction that applicant or any one else may put on the description, the terms used, or the claims. The office can simply prevent the use of improper terms in a substitute specification, which has been the aid in this case." To this the counsel for the applicants responded: "We understood the examiner's closing statement as meaning that the changes in language which have been heretofore made have been simply intended to 'prevent the use of improper terms,' and therefore that the office understands them in the sense intended, and as heretofore explained."

After this the examiner required the applicants to insert in the description in the specifications of the chair to which the applicant's device was applied words

showing that the rockers were attached to the seat part of the chair "by a spider," and also these words contained in the original, "and, to prevent the springs bending or rubbing, the edges of the box forming the rockers should be a somewhat greater distance apart than the sum of the two diameters of the two springs," in order to show that the springs were not wide apart, as in a platform rocker, but were near the center. The applicants accompanied these amendments with the following letter: "It being understood that applicant's present claims are not limited to special forms or details of construction, we insert the above amendments simply to make the specification conform to the original description, from which we have never desired or intended to depart materially. In this view we simply intend the words, 'by a spider,' constituting the first insertion, as descriptive of the drawings; but the intentional and deliberate omission of these words from the claims will, of course, prevent any construction limiting the use of the invention to a chair having the rockers secured to the seat part by a spider. Instead of this, these claims are still intended and understood as covering a chair in which the rockers are secured in any ordinary way; as, for instance, in platform rockers. And, in substance, the same is true in reference to the insertion relating to the width or distance apart of the rockers, this being merely intended to show that the rockers must be wider apart than the springs, so as to be on the outside thereof."

In the course of the proceedings, the applicants did succeed in making some changes in the language of the specifications from that used in the original, but, so far as appears from the file wrapper and contents, the patent-office examiner never modified his ruling in respect to the scope of the invention, to wit, that it did not cover the use of springs on a platform rocker. The specifications as allowed stated the object of the invention to be: "To provide a chair consisting of a seat having rockers secured to its under side, and a base having a lower support for said rockers, with two connecting springs, which shall be of sufficient strength and tension to securely connect the base and seat parts together, and hold the rockers in firm alignment with their lower support, so as to prevent the said rockers from slipping forward or backward or sidewise thereon." The specification continues: "In the drawings we have shown our invention as applied to a revolving office chair provided with rockers secured to the under side of its seat part by a spider, and a lower support therefor on its base part; and in these drawings A indicates the chair seat, B the base, E the upper rockers, F the lower support or rockers on which the upper rockers rest and move, and G the connecting springs. The rockers may be of cylindrical box form; or the sides of the boxes, the edges of which form the rockers, may, if desired, be parallel or otherwise arranged. The edges of the upper and lower rockers may be curved reversely,—that is, both of the upper rockers from a center above and both of the lower rockers from a center below their line or point of contact; or one, the upper or lower, may be curved, and the other present a straight or other line on its edges. It is obvious that in a strict sense only the upper rockers actually rock, the other or lower ones being stationary, and serving as one form of the 'lower support' for the upper rockers, the other form being the flat plate shown in Figs. 2 and 3. The two connecting springs are to be placed and secured in or near the center of oscillation and at off-center points,—that is, at the sides of the chair center, instead of in its front or rear,—and, to prevent the springs bending or rubbing, the edges of the boxes forming the rockers should be a somewhat greater distance apart than the sum of the two diameters of the two springs. The springs are arranged with their longitudinal axes vertical, and their ends rigidly attached to the seat and base parts of the chair, so as to hold the rockers in their proper relative position: and by their resisting the rocking motion in one action or direction and assisting it in the other an easy, comfortable, and agreeable motion is produced, closely resembling that of an old-fashioned rocking chair; and wholly different from the abrupt jerk of a pivoted tilting chair and the swaying motion produced in a seat oscillating on long plate-springs. As shown in Figs. 1 and 4 of the drawings, each of the springs is attached directly to the top of the rocker box, k1. As shown in Figs. 2 and 3, they are each secured to a bracket, k, projecting from the side of the rocker; and, as shown in Fig. 6, they are secured by clamps or clips. Each of the ends of the wire forming the

spring may be parallel with the coil next to it, as shown in Fig. 6, to avoid making any short bend in the metal; and, however the coils end, the connecting devices must always be such as to rigidly secure the springs to the seat and base parts of the chair, respectively. The two springs, arranged as described, constitute the connection between the seat and base parts of the chair for holding the rockers and their lower support in alignment and proper relative position. It is necessary, therefore, that they be of sufficient dimensions and strength to hold such parts together, and prevent lateral and longitudinal slipping of the rockers without the use or aid of guides or similar appliances. The springs, thus forming the connection between the upper and lower parts of the chair, not only dispense with the use of guides, etc., but also regulate or control the rocking motions by their elasticity and strength. When the chair seat is tilted or depressed in the rear, the upper rocker will roll upon the lower, and the springs will bend, their coils opening slightly in front and correspondingly approaching in the rear (see Fig. 4), the motion thus produced being an actual rocking motion upon a changing fulcrum, differing wholly from the motion of ordinary tilting chairs, in which the movement is on a pivot forming a fulcrum of fixed position. The backward rock is resisted by the tendency of the springs to retain their normal position, and the forward motion is assisted by the same tendency; the result being a motion unapproached by that of any tilting or oscillating chair with which we are acquainted. The essential idea or feature of our invention being the connecting together and holding in proper position of the seat and base parts of a chair having rockers secured to the under side of its seat part, and a base having a lower support therefor, by two spiral springs located at opposite sides of the chair center, we of course do not wish to be understood as limiting ourselves to special forms or details of construction, or in any way as waiving the use of proper equivalents.

Fig. 1. Fig. 4. Fig. 6. Fig. 5. Fig. 2. Fig. 3.

The use of two springs at off-center points is a material improvement over the use of a single spring, for the reason that it is difficult, when a single vertical spring is used, to secure it to the seat and base parts so as to prevent the slipping. or turning or relative derangement of the rockers and lower support. In such case the spring is practically a pivot, around which it is difficult to prevent the seat part of the chair from turning when the ordinary character of fastening is used, such as are manufactured rapidly and in large quantities as a trade-fitting or article of hardware. We do not herein claim any special or particular means for effecting the rigid connection of the springs with the upper and lower portions of the chair, our invention being directed to the feature of applying the springs so that they will constitute the connection between the upper and lower portions of a chair for holding the rockers and their lower support in alignment and proper relative position, as pointed out in the claims. Nor do we herein claim the use of a single spring as the connecting medium between the upper and lower portions of a chair for holding said parts in alignment and proper relative position, as this feature, with others, is covered by the generic claims of our application filed July 30, 1880, No. 14,470, of which this is a division. We claim: First. The combination, in a chair, of a seat having rockers secured to its under side, a base having a lower support for said rockers, and two spiral springs rigidly connected to said parts, respectively, and located and secured at opposite sides of the chair center, and constituting the connection between the seat and base parts of the chair for holding the rockers and their lower support in alignment and proper relative position, substantially as described. Second. The combination, in a chair, of a seat having rockers secured to its under side, a base having a lower support for said rockers, and two spiral springs rigidly connected to said parts, respectively, and located and secured at opposite sides of the chair center, and in the center of oscillation of the chair seat, and constituting the connection between the seat and base parts of the chair for holding the rockers and their lower support in alignment and proper relative position, substantially as described."

The circuit court held the patent valid, found that the defendant infringed, and entered a decree for an injunction and damages in complainant's favor.

Miner G. Norton, for appellant.

Ephraim Banning, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). If the specifications and claims of the patent were to be given effect without regard to the history of the art or the proceedings in the patent office, it might be conceded that the defendant's device would come within the scope of complainant's monopoly. We must, however, use both aids in construing the patent.

It is claimed that the essence of complainant's patent is the use of a strong spiral spring rigidly attached to the rockers and base, to assist and resist the rocking motion of a rocking chair, and to keep the rockers in proper alignment with the base on which they rock without the aid of stops or other devices. It is conceded that before this invention spiral springs had been used to connect the rockers with the base of a rocking chair, but it is said that the springs had never been made strong enough, and had never been rigidly enough secured to the rockers and base, to keep the rocker in proper alignment without the use of stops or other devices. It must be admitted from this statement of complainant's invention that it covers quite a narrow field. The strengthening of the spring, and the increase of rigidity with which it was attached to

the rockers and base, may have involved invention, but it so nearly resembles a mere increase in the physical strength of an already suggested means of performing a known function that it is certainly not a pioneer or primary invention, or one the scope of which the courts would be inclined to enlarge beyond what is exactly shown in the patent. It is not a patent in the construction of which any liberal doctrine of equivalents will be applied.

The history of the proceedings in the patent office, and the direct evidence of one of the inventors himself, convince us that when the patent was applied for the inventors had no idea of applying the spiral spring to a platform rocker. They were engaged in perfecting an office tilting and revolving chair. They had first invented a chair in which a spiral spring formed the sole support of the spider and seat, and then, to prevent lateral motion in this chair, they inclosed the spring in a small rocker box, the spring still remaining the main support of the spider seat and occupant. For four years they pressed for a patent for such a device. Their main invention embraced a single spring placed beneath the center of the chair, and forming part of the pivotal bearing on which the seat moved. The suggestion of two springs was merely incidental as a substitute for one spring, and they were manifestly intended to be used in the same way at the chair center. It is very certain that the Connollys never put spiral springs on a platform rocker, and never claimed to have invented such a use, although it appears by Bunker's affidavit that even before they filed their specification, in 1880, more than 1,400 were in use, and many thousands were manufactured and sold during the four years they were pressing for a patent. In 1884, when the inventors sold the invention, those who bought seemed to have more ambitious views of the extent of the invention, and at once attempted to enlarge its scope by securing a patent on the use of two springs like those shown in the patent, but without a rocker box, and at a considerable distance apart on platform rockers. It may be conceded for the purpose of the argument that it was within the right of the inventors, pending the consideration of their specification, to enlarge their original claims to cover every improvement lurking in their invention, even though, when they first filed their specifications and claims, they may not have realized the wider application of their discovery. But it is manifest from the file wrapper that the patent-office examiners charged with the duty of limiting claims to what was really invented either did not think that this might be done, or else considered that the actual invention was limited to the exact form of device shown in the original drawings. In any event, the examiner was of opinion that the invention could not cover the application of spiral springs to the platform rocking chair. Thus he expressly ruled, and fortified the ruling by a very full discussion of his reasons therefor. Not only did he express this opinion, but he expressly adjudicated the point; for, when the inventors applied for claims which in terms covered platform rocking chairs, he rejected

those claims on the ground that the inventors had made no invention for such chairs, and required the applicants not only to strike out the claims, but also to strike out new drawings designed to show the application of spiral springs to platform rocking chairs, and to restore the original drawings of a tilting and revolving chair, and to reinsert in the specifications words of description which could relate only to such a chair. This decision was never reconsidered, and we find the examiner insisting on these insertions until the last. Instead of retaining platform rocking chairs in their claims, the applicants then returned to the phrase used in the original application of "tilting or rocking chair," and the claim made by complainant was that "rocking chair" included all rocking chairs,—platform rockers as well as revolving or tilting rockers. In view of the original drawings and the ruling of the patent office, however, we are of opinion that the term "tilting and rocking chair" was and is to be construed as meaning "tilting and rocking chair," and as not including ordinary platform rockers, which are never known as tilting chairs. It is clear that what the applicants did was to interpose between the spider of a revolving chair seat and the spindle small rockers to guide the movement of the seat upon the tilting spring, and they therefore called their chair "a tilting or rocking chair." When it was objected by the patent office that patents for platform rocker chairs were anticipations, the Connolly brothers sought to avoid the references by changing the name to that of "a tilting chair," and then to that of "a tilting and oscillating chair," to show that they had never intended to cover a platform rocking chair, and had not used the term "tilting or rocking chair" with such an intent. Subsequently, the assignees of Connolly brothers manifested a desire to give the words "tilting or rocking chair" a wider meaning. It is true that in the specifications, as allowed, the patentees were permitted to introduce the description of the tilting and revolving chair shown in the drawings as only one illustration of the invention, and to say, at the close of the specifications, that they were not limited to special forms of construction, and to state the essence of the invention in a broad way; and it is also true that the claims allowed were not specifically limited to a particular kind of a chair. But the evident purpose of the patent office in requiring the specifications and drawings to be made like the original specifications, and in rejecting claims for platform rocking chairs, was that everything in the claims should be limited by the only form of chair and only application of the spiral spring shown by the drawings and specification. The range of equivalents permissible under general language of the specifications is, therefore, to be limited to the use of a spiral spring in a chair with a tilting and revolving seat and a stationary base.

It is well settled that where the patent office rejects a claim covering a certain device on its merits, and such rejection is acquiesced in, and the patent issues, the applicant cannot afterwards be allowed a construction of the claims allowed wide enough to embrace

the claim which was rejected. In Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 629, Mr. Justice Brown, speaking for the supreme court, in considering the contention that a claim should have a certain construction, said:

"But the patentee having once presented his claim in that form, and the patent office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto. Leggett v. Avery, 101 U. S. 256; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493; Crawford v. Heysinger, 123 U. S. 589, 606, 8 Sup. Ct. 399; Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475. It is true, there were cases where the original claim was broader than the one allowed, but the principle is the same if the rejected claim be narrower."

It will be seen from this passage that complainant cannot avoid the effect of the rejection of a claim for the use of its device on platform rockers by the contention that the claim which was subsequently allowed was even broader than a claim specifically embracing that kind of a chair. Moreover, as we have already said, the rejection and the reasons for it never having been withdrawn, the course of the patent office in allowing the claims as it did is the strongest evidence that, with the changed specifications, it regarded the claims allowed as limited to the chair shown in the specifications.

We come now to the novel question presented in this case. It is argued, and the circuit court held, that because the applicants, after the rejection of the claims, and after inserting the required limitations in the specifications, protested that the examiner was wrong in rejecting the claims, and advised him that they proposed to insist on a construction of claims as amended to cover the same ground as the rejected claims, the ruling of the patent office is not to be given the same effect as it would otherwise have. It seems to be contended that an applicant can qualify or minimize the effect of his acquiescence in the rejection of a claim by stating to the patent office that it is not an acquiescence, and that he expects to insist upon his right to cover the same ground as the rejected claim covered, under other and amended claims. We are clearly of opinion that he cannot thus destroy the effect of a patent-office ruling. If he dissents from it, he should appeal from the ruling. In this case, if, as the applicants continued to assert in their letters to the patent office, they proposed to claim that their invention covered spiral springs used in the platform rocking chairs, they should have carried the question of their right to do so on the occasion of the rejection of the specific claim therefor to the successive appellate tribunals in the patent office, and thence, if necessary, by appeal into court. Not having done so, they must be taken as having acquiesced in the rejection; there is no middle ground. Because of this acquiescence the patent of complainant cannot be construed to

embrace any combination of spiral springs with the rockers of platform rocking chairs.

The decree of the court below is therefore reversed, with directions to dismiss the bill.