SUPERIOR DRILL CO. et al. v. LA CROSSE PLOW CO.

VAN BRUNT v. SAME.

(Circuit Court, W. D. Wisconsin. February 6, 1908.)

1. PATENTS—INFRINGEMENT—GRAIN DRILLS.
      The Packham patent, No. 557,868, for an improvement in grain drills, *held* not anticipated, and to disclose patentable invention, but, as construed by the Circuit Court of Appeals in a prior suit, not infringed.

2. SAME.
      The Van Brunt patent, No. 659,881, for an improvement in grain drills, discloses invention and is valid, but is for a highly specialized combination of old elements in a fully developed art, and is limited by the prior art to the specific combination shown. As so construed, it is not infringed by the machine of the Davis patents, Nos. 830,644 and 830,645.

In Equity. Suits for infringement of letters patent, No. 557,868, granted to F. R. Packham April 7, 1896; and No. 659,881, granted to W. A. Van Brunt October 16, 1900, both for improvements in grain drills. On final hearing.

Staley & Bowman, for plaintiffs.
Fred Gerlach, for defendants.

SANBORN, District Judge. Suits for infringement. For convenience they were heard together, and may be conveniently decided together. The patents in question relate to improvements in seeding

and planting machines, and the use of revolving disks to open furrows for the deposit of the seed, the keeping open of the furrow until the seed is effectively scattered and lodged in the furrow, and the effective covering of the seed. In other words, they relate to improvements in furrow openers, seed-delivery conduits, and furrow closers; and, incidentally, to scrapers, or appliances to prevent clogging, and modifications of the scrapers and conduits for use in heavy and sticky soils, especially in the Northwest where the seeding must be done as soon as the frost leaves the ground, and while it is wet and sticky, and covered with straw and trash. The art of seeding machines has reached a highly developed stage. Many machines involving separate patents are made and sold so nearly alike that a superficial observer would pronounce some of these machines identical. Defendant's machine appears to be quite similar to Van Brunt's, but both of them appear quite distinct, perhaps equally so, from a casual inspection, to the Superior Company's device, which is the Packham patent of 1896, No. 557,868. But when the Van Brunt and La Crosse devices are critically examined, by one having in mind the prior art, and the proceedings in the Patent Office attending the issue of the patents, many differences are discerned. The development of the art has become highly specialized. For many years little opportunity has existed for any broad exercise of the inventive faculty in furrow openers, but during this period very many important details of improvement have been discovered and applied, and secured by patents.

The Packham patent, owned by the Superior Company, was issued April 7, 1896, the Van Brunt patent October 16, 1900, No. 659,881, and defendant's patent was issued to Frank E. Davis September 11, 1906, Nos. 830,644 and 830,645. The Packham patent was sustained by the United States Court of Appeals of the Sixth Circuit in 1902. Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 890, 53 C. C. A. 36. A quotation from that opinion will show the nature of the invention, the conditions existing in 1896, and the ground on which the patent was sustained. The court say:

"The general composition of grain drills and their mode of operation being well known, it will be necessary to particularly describe only those parts of a drill which are immediately involved in the operation of opening the furrow, dropping and scattering the seed in the furrow, and covering the seed with the soil. As might be expected from the universal use of these implements, which have become so indispensable in the production of grain crops, a great many inventions and a long list of patents had already developed and spread the knowledge of the art of their construction, and their use, at the time of Packham's invention. In one of the leading forms of these the furrow was opened by a device in the shape of a very narrow double-moldboard plow, which, penetrating the ground at an acute angle, opened and slightly raised the soil on either side, whereupon the seed was dropped through a tube behind and within the wings of the opener, while the soil was thus lifted, and immediately upon the passing forward of the opener out of the way the soil dropped back upon the seed. In another the furrow was made by a wedge-shaped device, called a 'shoe' and somewhat in the form of a sharp V, both in its horizontal and its vertical shape, the point dividing the soil which was pressed sidewise by the wings, and, the lower edge of the shoe being also an angle and the wings flaring outward, the earth was in consequence pressed downward while it was being pressed sidewise, thus leaving the furrow in a V shape. The seed was dropped in the furrow immediately behind the shoe,

and the sides of the furrow being impacted it was necessary to employ a covering device, as a short chain carrying rings dragging behind the shoe or blades which were set so as to scrape the earth back into the drill, or a press-wheel which would crush down upon the seed the upper part of the sides of the furrow. In another, instead of a shoe, the same work was done by using a roller in the form of two concave discs having their concave sides facing each other, and their edges united in one, the result being that, as the roller moved on its journal it formed and left the V-shaped furrow of the shoe-drill. Some covering apparatus was necessary as in the case of the shoe-drill and for the same reason.

"In recent years the disc-harrow has come into general use. As usually constructed the operative part consists of concave discs, located at equal distances upon a shaft having bearings. In use these discs, and, of course, the shafts were set at an angle to the line of the draft, and when the harrow was drawn forward the revolving discs would cut into the ground and scrape up on their concave sides, and partly turn the soil lying in their wake, leaving ridges larger or smaller depending somewhat upon the angle at which the discs were set. Thereupon, invention began of means and methods to utilize this form of harrow for the purposes of a seeding drill, and a considerable number of patents were taken out upon such inventions. The general object sought to be obtained was to devise some subsidiary apparatus, which co-operating with the discs of the harrow would open a furrow, drop the seed evenly upon the bottom thereof, and then properly cover it. Several of these inventions seem blind enough, but others made some approach toward the definite purpose."

The court next proceeds to describe a prior invention of Packham in 1894, in which the seed was dropped from a point opposite the center of the disk and that a difficulty with this construction was that when clods, stubble or trash were met with the seed fell on the land outside the furrow, and then continues:

"So it seemed a desideratum that a construction should be devised whereby the furrow should be kept clear of obstructions and the seed be prevented from spilling upon the land outside the furrow while it was being sown and covered. The purpose of the Packham invention, now in question, was to supply this requirement. It consisted in adding a shield to the former construction extending from the conduit and on the land side thereof, down into the furrow and having its forward edge bent a little inwardly and conformed to the convex surface of the disc, so as to prevent any obstruction from coming into the furrow or in the way of the falling seed. The shield was attached to the frame above in a constantly fixed relation to the disc, and so located along the rear and bottom segment of the disc, but at a little distance therefrom, as to follow in the wake of the disc and just within the furrow made thereby when the machine was in operation, the lower edge of the disc being also bent inwardly to conform to the convexity of the disc and consequently to the land side of the furrow. It is true that the purpose of deflecting the seed, which is dropped against the inside of the shield, is not mentioned in the specification; but in describing its form it is stated that it extends downwardly, 'following substantially the line of the furrow-opening disc,' and in the drawings (see figure 4 above) it is shown to conform to the convex face of the disc, curving inwardly at the bottom. It is seen that the obvious consequence of this is that the seed falling upon the inside of the shield would be deflected against the lower portion of the disc, and in use this is found to be the result. And in Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 72 Fed. 67, 19 C. C. A. 13, it was held by this court that a patentee is entitled to all the advantages of his invention whether he knew of such advantages or not; and that proposition has been confirmed by our more recent decisions. Frederick R. Stearns & Co. v. Russell, 85 Fed. 218, 29 C. C. A. 121, and Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255, 268. And see the learned opinion of Judge Sanborn in National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 709, 45 C. C. A. 544."

Having thus described the invention the court sustains it as producing a new and useful result, and proceeds as follows:

"The proceedings in the Patent Office on Packham's application for the patent in question were put in evidence, and it is claimed that they have the effect to restrict his claims. From the contents of the file wrapper it appears that upon the filing of the application the first three claims were objected to upon references which seem to import that it was understood that the shield had something to do with opening the furrow. Thereupon the first claim was withdrawn, and a new one substituted, the formation of the shield being explained by letter, the applicant saying therein: 'By this arrangement the shield has absolutely nothing to do with opening the furrow, while in the reference devices this is usually the chief function of the shield.' Thereupon, the Office made the further objection that the first three claims lacked patentable novelty, upon references. To this Packham responded by letter as follows: 'It will be understood that the shield forms no part of the furrow-opener, nor is it in fact a part of the conduit. The conduit ends where the shield commences, and as the shield stands within the angle of the furrow-opening disc, the soil remains in the condition left by the rotation of the disc while the seed is dropped from a point above the furrow, thus ensuring the most efficient planting.' And he amended the claims here involved to the form shown in the patent. Upon this explanation and amendment the patent was issued. The effect of the applicant's renunciations was to make it free from doubt as to whether his shield should assist in making the furrow and whether it should form a part of the conduit. It is not now claimed that it performs either of those functions. If it were so claimed the proceedings would constitute an estoppel. Thomas v. Rocker Spring Co., 77 Fed. 420, 23 C. C. A. 211. On the contrary what is now claimed is in full accord with the applicant's disclaimer."

The prior art is examined by the court, and distinguished for the reason that it does not disclose the shield of the Packham device, designed to travel within the furrow and keep it clear from rubbish; and which also serves, on its opposite side, to deflect the seed against the disk, and keep it within the furrow so kept open to receive it by the shield. The court then says:

"The result is that the patent must be held valid. It was not a primary invention, but we think it brought the organization of disc furrow-opening and seed-dropping and covering devices to a much higher degree of perfection than had previously been attained. This was done by locating in the right place and in the right manner a shield or guard constructed in the right form to accomplish a better and more useful result. The invention constituted a distinct and valuable improvement, and was patentable for what the claims here involved fairly import, and the patentee (and his assigns) are entitled to claim as equivalent all such combinations of the same, or similar parts, organized in a similar manner and operating to perform a like mechanical result."

I am satisfied with the reasoning of this case, and conclude that the Packham patent is valid.

The precise form of the La Crosse patent is shown further on. It contains no shield to keep the furrow open or deflect the seed. Distinguished from the Packham invention, it contains a seed conduit or boot of the "closed delivery" type, while the Packham has an open delivery. In the former the seed is carried clear down into the furrow by a continuous conduit located just in the rear of the disk, and there deposited. In the Packham device, using his own words, "the shield forms no part of the furrow-opener, nor is it in fact a part of the conduit," but is designed to hold the soil in the position left by the

disk until the seed can be deposited. In the La Crosse device the only shield is the grain conduit itself. It is part of the conduit. There is no shield "conforming to the shape of the side of the disk, nor any shield standing wholly within the angle of the disk, so as to hold the soil in the position left by the disk. There is nothing, in short, in defendant's machine, which is found in the Packham claims, as construed by the Court of Appeals in the case cited.

I conclude that the Packham patent is not infringed, and that the bill of the Superior Company should be dismissed.

As before stated the Van Brunt and La Crosse devices are superficially quite similar, and I have made a careful study of the respective claims, and the art prior to Van Brunt's patent, so as to endeavor to find out just what Van Brunt invented, and how the Patent Office was able to distinguish an award of patent on the Davis or La Crosse device. At the time Van Brunt entered the field, both the "open delivery" and the "closed delivery" types of machines were old. It was also old to employ scrapers for cleaning the disk surfaces. Scraper blades had been attached to seed conduits and to drag-bars, to keep clean both sides, or one side only, of the disk. Seed conduits had also been supported or carried in various ways by the drag-bars, either by attaching the conduit directly to the drag-bar, or sustaining it by a supporting arm. With the prior art in this situation Van Brunt applied for an improvement in grain drills. From the center or journal of the disk, where it is attached to the drag-bar, he extends a curved arm upward and backward and near the concave side of the disk, and from the top of the arm he carries the closed seed conduit, made integral with the arm, down on the opposite or concave side of the disk, and close to it. To the toe of the conduit he attaches a narrow scraper, lying against the disk, and up to its center. Described in another way, he combines a boot, a projecting arm, a bearing for the disk at the end of the arm, a disk placed between boot and arm, and one scraper attached to the arm on one side and another attached to the toe of the boot on the other side. He successfully combines specific, well-known, and useful things into a particular relation to each other, by designing a yoke, composed of an arm and a boot, mounting the disk by a journal or bearing at one end of the yoke, and carrying a scraper from the other end up to the bearing on the opposite side; thus disposing the disk between the arm and boot, and adding a scraper on the convex side, sustained by the arm. It is a specific, highly particularized device for supporting the seed conduit entirely upon the bearing or journal of the disk. It is in one piece (aside from the scrapers), supported wholly by the disk bearing, and has no connection with the drag-bar. In one form of the invention the casting is supported by the bearing on both sides of the disk, and in the other on the arm-side only.

All the Van Brunt claims are for a combination. The first combines (1) a boot; (2) an arm (offset laterally from the boot); (3) a disk mounted at the end of the arm; (4) disposed between, arm and boot. The second adds (5) a scraper attached to the arm. The third claims the same elements combined with a concave-convex disk and boot on its convex face, except the opposite scraper, attached to the toe of the

boot, on the convex side. The fourth claims a combination of boot, arm, disk, and bearing at the end of the arm, with the two scrapers. And the fifth claims a combination of boot and disk with the convex face scraper. Claims 6–8 relate to the bearing, and claim 9 was withdrawn. Claim 10 relates to a rear-presswheel, and a spring, to keep it down. The gist of the invention is specified to be in exposing a greater amount than before of the disk surface for agitating the soil, and so arranging the scraper that the boot may be extended to the bottom of the furrow, and all liability of trash gathering on it be removed. Also, in locating the boot where the rotation of the disk carries the soil away from it instead of packing against it, and in so constructing the boot that within itself is formed an inclosed conduit between the top and point of discharge. These statements were contained in the original application, before the original claims were rejected and canceled, and at a time when Van Brunt claimed a boot on one side of a disk and means for supporting it on the other, and before the language was amended so as to claim the precise means of support by mounting the disk at the end of the arm. Outside of the specific combination of disk, arm, boot, and scraper there was no invention in Van Brunt's machine, because two earlier patents covered the idea of attaching a scraper to the toe of the boot. In the Colver patent of 1855, No. 12,895, there is the same form of a narrow scraper hung on the toe of the boot; but it covers only a small part of the disk, its point extending upward only a third of the distance from the edge of the disk towards its center. On the other hand, in the Christman, Brennan, and Homire patent of 1898, No. 602,827, the scraper extends from the toe of the boot clear up to the center of the disk; but it differs considerably from the Van Brunt scraper because it covers more than a quarter of the face of the disk, thus affording a lodging place for soil and débris, which is avoided by Van Brunt by making the scraper narrow like a butcher's knife, leaving most of the disk surface free. But the whole conception of the Van Brunt device is found in these two earlier patents, thus depriving his invention of all real patentable novelty except such as is embodied in his specific combination.

Turning now to the La Crosse device: It has already been shown that it bears a great superficial resemblance to the Van Brunt patent. But when closely examined a sufficient difference appears to distinguish it from the latter. Both are highly specialized combinations in a fully developed art. The fact that a patent was issued upon the latter device is presumptive evidence of its validity, and that the skilled patent officers were able to distinguish it from the Van Brunt device. No interference was declared by the commissioner of patents, but the Van Brunt patent was cited as a reference.

Some of the original claims made by Davis, in his application for the La Crosse patent, conflicted with the fourth claim of the Van Brunt patent. That claim is for a combination of boot, arm, disk, and bearing, with the scraper carried on the boot-toe. Davis at first, in his first four claims, described a combination of a drag-bar with a disk, a boot, and a scouring-blade secured to the boot, also a scouring-blade comprising a scraper. The scouring-blade is described in the specifica-

tions as an extension of the scraper, made of polished steel, easily passing through the furrow and soil, deflecting the soil away from the boot, and effectively preventing it from adhering to it. The Van Brunt scraper and the La Crosse scraper and scouring extension, are shown in the drawings as follows:

Van Brunt Scraper.

La Crosse Scraper and Scouring-Blade.

The scouring-blade also forms part of the outer wall of the boot, and the scraper removes the soil from the disk to be deflected by the scouring-blade away from the boot and the seed.

The examiner rejected these original claims for a combination of drag-bar with the disk, boot, scouring-blade, and scraper, but allowed them to be amended to claim the combination of a drag-bar, disk, boot, scouring-blade, and scraper, and in this form a patent was issued. The

FEDERAL REPORTER.

original claims were rejected on the Packham, Van Brunt, Mast, and Hoyt patents.

The practical differences between Van Brunt and La Crosse are that Van Brunt puts the disk between the boot and arm, and La Crosse puts the boot behind the disk. Van Brunt's scraper cuts the soil, etc., off from the revolving disk and deflects it to the land side of the furrow, while La Crosse cuts it off and plows through it by means of the scouring-blade. In one device the soil is deflected wholly by the scraper, and in the other partly by the scraper and partly by that wall of the boot formed by the scouring-blade. Another difference, both in claims and construction, is that Van Brunt supports his arm, boot, and scraper upon the disk bearing, while the La Crosse device is supported wholly from the drag-bar. The distinctions referred to are indeed close, but in view of the state of the art they are sufficient to distinguish the two devices, and relieve the defendant from the charge of infringement. Van Brunt might lawfully follow the conceptions of Colver and Christman in specific combination with other elements, but in so doing he should be limited to the construction he adopted, leaving defendants free to adopt another specific construction embodying the same constructions in a different form.

Van Brunt is entitled to the credit of having designed a practical and efficient improvement, and his patent is valid and useful.

The La Crosse patent secures a similar beneficial result by a different combination and in a different way; and the patent is also valid, and does not infringe.

The bills in both cases should be dismissed.