.NATIONAL CASKET CO. v. STOLTS.

(District Court, S. D. New York. July 5, 1912.)

1. PATENTS (§ 328*)—VALIDITY—PRIOR ART—BURIAL CASKETS—FACE PLATE.
    Reissue patent No. 12,750 (original No. 619,567), issued to National Casket Company as assignee of William Hamilton, for a gauze face plate for burial caskets, *held* devoid of invention, in view of the prior art, and was therefore invalid.

2. PATENTS (§ 328*)—REISSUE—ABANDONED CLAIM.
    Reissue patent No. 12,750 (original No. 619,567), issued to National Casket Company as assignee of William Hamilton, for a gauze face plate for burial caskets, *held* based on an abandoned claim made on the original application for a patent and was therefore invalid; the reissue statute (Rev. St. U. S., § 4916 [U. S. Comp. St. 1901, p. 3393]) being designed to save the inventor against inadvertence, accident, or mistake, and not to permit the bringing forward of claims previously deliberately abandoned by him after the original patent had been declared invalid in litigation.

Suit in equity by the National Casket Company against Julius W. Stolts, as president and treasurer of J. & J. W. Stolts, an unincorporated joint-stock association, for infringement of reissue patent No. 12,750, dated February 11, 1908, for face plate for burial caskets, is-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sued to the National Casket Company, as assignee of William Hamilton, deceased. On final hearing. Bill dismissed.

Duell, Warfield & Duell, of New York City (C. H. Duell, F. P. Warfield, and H. S. Duell, all of New York City, of counsel), for complainant.

Briesen & Knauth, of New York City (Hans v. Briesen, of New York City, of counsel), for defendant.

MAYER, District Judge. This case has traveled a litigious journey for a dozen years.

Apparently there is an art in casket making, and the rude means first employed to bury the dead have developed so that now the finished product may be selected from stock on inspection or by catalogue. For a considerable time the local carpenter or undertaker did the best he could, but now the bereaved, either in person or through the kindly offices of the sexton or "the funeral director," may select that form of burial which appeals most fittingly to sentiment and pocket. Indeed, according to the exhibits herein, one may have a wide choice of caskets as per advertisement and catalogue. It was, perhaps, with prophetic foresight of the future increase in wholesale casket making that William Hamilton of Allegheny, Pa., then of the National Casket Company, thought out what he believed to be an invention. For more than a quarter century the face of the dead had been sheltered by a glass plate. This gave an opportunity for those who so desired, from affection or curiosity, to take a last look at the remains. But, as the country developed and travel increased, deaths away from home likewise increased, and the breakage of glass became a matter of inconvenience and expense. The complaints of customers suggested to Hamilton the desirability of experimenting with some satisfactory substitute. This was found in mousseline de soie, a thin transparent, nonbrittle gauze-like material. The basic thought of Hamilton is expressed in his application, as follows:

"My invention relates to face plates for burial caskets and is designed to do away with the difficulties arising from the use of glass plates or panels commonly used therein. Where these glass panels are employed they are liable to become broken in the course of transportation of the casket and in falling deface the features of the corpse. Moreover, when such caskets are exhumed, it is often found that the swelling of the wood of which the cover is composed has broken the glass panel. My invention overcomes these difficulties; and it consists in providing the casket with a frame over which is stretched a strip of a transparent fabric—such, for instance, as silk or wire gauze. This nonbrittle fabric takes the place of the glass now ordinarily used. * * * The advantages of my invention will be apparent to those skilled in the art, since the disadvantages consequent upon the use of a brittle panel, such as glass, are done away with and a transparent panel obtained, which is not liable to breakage due to jars upon the coffin or consequent upon swelling of the wood."

His claim was "the combination with a burial casket, of a face plate comprising a stretched sheet of transparent nonbrittle gauze fabric." After some difficulty (hereinafter to be referred to), United States letters patent 619,567 was issued to Hamilton under date of February 14, 1899. Suit for infringement was brought and Judge Hazel held

that the patent, in view of the prior art, did not involve invention. National Casket Co. v. Stoltz (C. C.) 127 Fed. 158. On appeal there was an affirmance which did not go to the merits of the case. National Casket Co. v. Stoltz, 135 Fed. 534, 68 C. C. A. 84. Thereupon the case was again tried and additional testimony adduced by both sides, and on this occasion Judge Ray held that the patent disclosed invention. National Casket Co. v. Stoltz (C. C.) 153 Fed. 765. Upon appeal the decree entered upon Judge Ray's decision was reversed, with instructions to dismiss the bill. National Casket Co. v. Stolts, 157 Fed. 392, 85 C. C. A. 300. The Circuit Court of Appeals held the patent void for prior use on evidence establishing beyond reasonable doubt that such face plates of cotton and silk illusion had, in numerous instances, been used many years before the application for the patent was filed. Judge Coxe wrote:

"We are convinced that the evidence of prior use presented for the first time in the case at bar establishes the invalidity of the Hamilton patent."

The decision of the Circuit Court of Appeals thus finally disposed of the case arising under the original patent.

[1] But complainant, with undaunted perseverance and the aid of able and ingenious counsel, applied for and succeeded in obtaining a reissue No. 12,750. In the suit for infringement based on the reissue, demurrer was interposed to the bill and sustained; and, again, on grounds not going to the merits, the decree below was reversed, with instructions to enter an order overruling the demurrer, with permission to the defendant to answer. National Casket Co. v. Stolts, 174 Fed. 413, 98 C. C. A. 617. An answer was interposed, and upon the issues raised thereby the case has now come on for final hearing.

The position of defendant is stated in counsel's brief substantially as follows:

"(1) The original Hamilton patent was based upon the alleged invention of the use of a stretched sheet of gauze in place of glass. No specific type of silk or wire gauze was described, nor did it contain any claim of invention for the frame as a sliding frame, or the method of mounting the gauze thereon.

"(2) All claims for such mechanical features made in the application for the original Hamilton patent were deliberately and intentionally abandoned prior to the issuance of the said patent. (See file wrapper.)

"(3) The original Hamilton patent was invalid because of prior public use. 157 Fed. 392 [85 C. C. A. 300]. No reissue is allowed in such a case. * * *

"(8) The invention of the original Hamilton patent having thus been completely anticipated in every detail cannot form the basis of a valid reissue, there being nothing which can be legitimately termed invention in or about Hamilton's gauze frame over and above the complete knowledge of all parts of this invention by the prior art.

"(9) If the reissue is for a different invention than that disclosed in the original Hamilton patent, it is void under the statute, which permits reissues only for the same invention.

"(10) The claims of the reissue, if treated as patents for sliding gauze frame as against any other type of gauze frame, are the same claims which were abandoned in view of references and otherwise in connection with the original Hamilton application. See file wrapper of original patent.

"(11) The delay in applying for the reissue (10 years) after the defendant had entered the market is fatal to the reissue. The complainant's only excuse, that it was not finally informed that its patent was void until the de-

cision of the Court of Appeals in November, 1907, is not a valid excuse, in connection with reissues—that is a doctrine applicable only to disclaimers. Intervening rights like those of these defendants, once accrued, cannot be defeated by a reissue.

"(12) The decision of the Court of Appeals in the former suit between these same parties based on a patent for necessarily the same invention (if any), and on the defendant's manufacture of the identical type of structure as the defendant now makes, constitutes res adjudicata between these parties. * * *

"(14) The Hamilton patent, or the reissue, is wholly devoid of any inventive thought in view of the prior art.

"(15) The Hamilton reissue is either (a) for the same invention as the original, and in that case it is anticipated; or (b) it is for a different invention, in which case it is void under 4916, R. S. [U. S. Comp. St. 1901, p. 3393]; Parker & W. Co. v. Yale Lock Mfg. Co., 123 U. S. 87 [8 Sup. Ct. 38, 31 L. Ed. 100]."

On the question of invention, the case may, perhaps, be regarded as close and as falling within that class of simple but useful and important inventions of which the Gorton garter in George Frost Co. v. Cohn (C. C.) 112 Fed. 1009, and 119 Fed. 505, 56 C. C. A. 185, is an example.

I incline, however, to the view that the reissued patent is devoid of invention, and that both on the facts and the law there is nothing in this record which strengthens it so as to escape the prior art. There is also a serious question as to whether the decision of the Court of Appeals in the former suit may not be res adjudicata. Whatever may be the correct conclusion on these points, there is another, and, it seems to me, insuperable obstacle to complainant's suit.

[2] The file wrapper of the original Hamilton patent shows that claims practically identical with those now made in the reissue were presented and abandoned in that application. The predominant thought in Hamilton's mind was the substitution of gauze fabric for glass in a burial casket. Other claims were made merely as subsidiary, and were finally abandoned in favor of the claim of the original patent.

The original application verified December 13, 1897, contained two claims: (1) For "a cover for burial caskets having an opening across which extends a layer of the transparent, nonbrittle medium such as gauze"; and (2) for "a cover for burial caskets having an opening and sliding frame within the opening, and a layer of transparent, nonbrittle material, such as gauze, stretched to the frame."

The examiner at the Patent Office rejected both claims, holding that gauze had been used as a face covering from time immemorial, and that its use as a substitute for glass was not a patentable invention. A reconsideration (January 19, 1898) was asked on Hamilton's behalf, but the application was finally rejected. Thereupon the applicant's attorneys amended his application by canceling both claims, and inserted a new claim as follows:

"The combination with a cover for burial caskets having an opening of a sliding frame supported by guides within the opening, said frame having stretched thereon a layer of transparent, yielding, nonbrittle fabric, such as gauze, substantially as described."

Further correspondence followed, the attorneys stating that Hamilton had not been consulted in regard to the application for reconsideration on January 19, 1898, and that they did not clearly understand that Hamilton "was the first to use the sliding frame within the opening as now specified in the new claim." This claim was finally rejected by the examiner, reference being made to the Hill patent November 10, 1868, No. 83,964, which showed a panel containing a glass plate.

A further effort, however, was made by Hamilton. An affidavit was presented in which Hamilton emphasized the "peculiar advantages" of his device as consisting in overcoming "entirely the danger incident to glass panels and caskets arising from the liability of breaking the glass due to the swelling of the wood after the casket has been buried." A reconsideration was asked, and amendment made by adding the following claim:

"The combination with a burial casket, of a cover having a frame with a layer of transparent yielding nonbrittle gauze fabric stretched therein; substantially as described."

The result of this affidavit and amendment was the allowance of a limited claim for a mechanical structure (combination) including gauze as an element, but not a claim for the use of gauze as appears in letters patent 619,567. This limited claim, however, was canceled and clearly abandoned in favor of the claim of the original patent (No. 619,567). (Letter of Corwin December 29, 1898.)

The file wrapper history may be briefly summarized as follows (adopting in part the concise tabulation by defendant's counsel):

"Finally Rejected and Abandoned.

"(A) A cover for burial caskets having an opening across which extends a layer of transparent nonbrittle medium, such as gauze.

"(B) A cover for burial caskets having an opening, a sliding frame within the opening, a layer of transparent nonbrittle material such as gauze stretched to the frame.

"(C) A combination with a burial casket of a cover having a frame with a layer of transparent, yielding nonbrittle gauze fabric stretched therein; substantially as described.

"Allowed After Final Rejection and Abandoned.

"(D) A combination with a cover for burial caskets having an opening of a sliding frame supported by guides within the opening, said frame having attached thereon a layer of transparent, yielding nonbrittle fabric such as gauze; substantially as described.

"(E) Final claim as stated in letters patent 619,567. The combination with a burial casket of a face plate comprising a stretched sheet of transparent nonbrittle gauze fabric."

It will thus be seen that the abandoned claim "(D)" was substantially the same as claim 1 of the reissue, No. 12,750. The latter reads:

"The combination with a burial casket cover portion of a relatively movable face plate comprising a supporting member and a stretched sheet of transparent, nonbrittle gauze mounted upon said supporting member."

Claims 2, 3, 4, and 5 differ so slightly in essentials from claim 1 that they cannot be sustained, if claim 1 fails.

The reason and motive for the abandonment of D, supra, and the adoption of E, supra, may be found in the testimony of Hamilton (now deceased) given in one of the preceding suits on July 20, 1905.

From that testimony it is clear that the objective point in his mind was to do away with the breakage of glass, and thereby to eliminate or reduce the unpleasant and expensive results therefrom. His company was actively engaged in the manufacture and sale of caskets apparently in a large way, his customers had complained of breakage, and he set his mind to overcome that difficulty. The mechanical construction or combination evidently seemed incidental to him or he may have believed or have been advised that a claim thus limited would be of doubtful validity either in view of the prior art or of the obvious character of the so-called invention, upon which it was based.

His testimony will be searched in vain, as will his specification and claim 1 of the original patent, for any thought other than to substitute a gauze fabric for glass.

To illustrate with a few extracts from Hamilton's direct examination:

"Q. 8. What led to your making the invention of the patent? A. The unsatisfactory results of the use of glass.

"Q. 9. Will you name some of the difficulties that presented themselves to the successful use of glass as face plates in casket lids, and some of the disadvantages that accrued from the glass so used? A. The great objection to the use of glass as I found it in the business was its liability to break. It was more expensive, and from sweating or moisture that gathered on the underside of the glass was not always transparent.

"Q. 10. Realizing the disadvantages of using glass in this relation, did you begin to think of ways of avoiding this difficulty? A. The thought was forced upon me from the complaints of our customers and the expense caused by the breakage of glass. * * *

"Q. 18. In the event of a breakage of the glass plates, upon whom does the expense of replacing such plates devolve? A. On the manufacturer. If the plate is broken in transit to the customer, the manufacturer replaces it in almost any case with the expressage added. If the plate is broken during the funeral, the undertaker usually claims a deduction for the price of the plate and damages for the disappointment. * * *

"Q. 28. Can you state the several places at which the glass face plates were usually broken? A. Possibly more were broken in transit on the railroad. They were, however, broken frequently in the hearse of the funeral, and in the removal of bodies it was often found that the glass was broken, and lying upon the face of the corpse.

"Q. 29. Had you for some years realized that glass was an unsatisfactory material for face plates of caskets before you hit upon the idea of the transparent gauze fabric face plate which forms the subject-matter of your patent? A. Yes; I was thoroughly convinced of it. * * *"

The reissue statute (section 4916, R. S.) was a remedial enactment, designed to save the inventor against inadvertence, accident, or mistake. It was never intended to permit experiment by litigation until some claim for the invention was worked out which either was not in the mind of the inventor or was deliberately abandoned by him.

I am inclined to think that, if Hamilton were alive now, he would be greatly surprised by the reading of reissue letters patent 12,750 applied for by his assignee in December, 1907, 10 years, almost to a day, after he filed his application for the original letters. Morgan Envelope Co. v. Albany Perforated Wrapping Co., 152 U. S. 425, 429, 14 Sup.

Ct. 627, 38 L. Ed. 500; Leggett v. Avery, 101 U. S. 256, 259, 25 L. Ed. 865; Thomas v. Rocker Spring Co., 77 Fed. 420–431, 23 C. C. A. 211; Richardson v. American Pin Co. (C. C.) 73 Fed. 476–479. Thus, for the reasons stated and irrespective of the questions of invention and res adjudicata, raised as to the reissue, the complainant is estopped from claiming the benefit of his abandoned claim or such a construction of his present claims as would be equivalent thereto.

The bill is dismissed, with costs.